**GLENIS CRAWFORD as the Personal Representative of the Estate of Kennedy E. Crawford, Plaintiff**
**v.**

**JOHN W. DALY, VIRGIN GRAND ESTATES HOMEOWNERS ASSOCIATION, RTI CONCRETE, L.L.C. d/b/a CENTERLINE CONCRETE, WATERFORD LAND DEVELOPMENT, L.L.C. and PETER FABBIO, Defendants**

Civ. No. ST-08-CV-281

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

November 29, 2010

JOEL H. HOLT, ESQ., Christiansted, St. Croix, USVI, *Attorney for the Plaintiff.*

ARTHUR POMERANTZ, ESQ., Law Offices of Arthur Pomerantz, St. Thomas, USVI, *Attorney for the Defendant RTI Concrete, LLC d/b/a Centerline Concrete.*

GARRY E. GARTEN, ESQ., Law Office of Garry Garten, Esq., St. Thomas, USVI, *Attorney for the Defendants John W. Daly and Virgin Grand Estates Homeowners Association.*

J. DARYL DODSON, ESQ., Law Offices of Moore, Dodson & Russell, P.C., St. Thomas, USVI, *Attorney for Waterford Land Development, LLC and Peter Fabbio.*

HOLLAR, *Judge*

## MEMORANDUM OPINION

(November 29, 2010)

This matter came on for a jury status hearing on Wednesday, February 17, 2010. Plaintiff, Glenis Crawford, as the Personal Representative of the Estate of Kennedy E. Crawford (hereafter "Plaintiff"), appeared through

Joel Holt, Esq. Defendants John W. Daley and Virgin Grand Estates Homeowners Association appeared through Garry E. Garten, Esq. Defendants RTI Concrete, L.L.C. d/b/a Centerline Concrete and Tilcon Leasing, LLC were represented by Arthur Pomerantz, Esq. and Defendants Waterford Land Development, L.L.C. and Peter Fabbio were represented by Daryl J. Dodson, Esq. At the hearing, the Court heard arguments from Garry E. Garten, Esq. in support of his motion to dismiss several claims in the Plaintiff's Third Amended Complaint,[1] after which, counsel for the remaining defendants joined the motion.[2] Thereafter, the Court heard arguments in opposition to the motion by Plaintiff's counsel, Joel H. Holt, Esq. Following the arguments, the Court informed the parties that it would take the matter under advisement.

## I. FACTUAL HISTORY AND PROCEDURAL POSTURE

The facts as contended in the Plaintiff's Third Amended Complaint state that on or about December 27, 2007, at approximately 12:30 p.m., Kennedy Crawford, (also referred to as "deceased" or "decedent"), was the operator/driver of a green "Mack" cement truck that bore tag number X-D-X-5-2-7. Kennedy Crawford, in his capacity as an independent contractor, was dispatched by Centerline Concrete to deliver concrete to Plot No. 34 located in the Virgin Grand Estates area, a residential home development in St. John, Virgin Islands. (Plaintiff's Third Amended Complaint dated February 17, 2010 at pp. 2-3 ¶ 7; p. 4 ¶ 14). Kennedy Crawford was accompanied by Mr. Haile Edgings, a concrete pumping specialist. (Plaintiff's Third Amended Complaint dated February 17, 2010 at p. 3 ¶ 8). The only alleged ingress and egress to the construction site at Plot No. 34 was an extremely steep, slippery and treacherous roadway known as "Estate Road." (Plaintiff's Third Amended Complaint dated

---

[1] Originally, the motion was entitled: "Motion to Dismiss Several Claims in the Second Amended Complaint." However, on February 17, 2010, the parties stipulated to and the Plaintiff filed a Third Amended Complaint.

[2] Because Defendants, RTI Concrete, L.L.C. d/b/a Centerline Concrete, Waterford Land Development, L.L.C. and Peter Fabbio, have joined in Defendants John W. Daley's and Virgin Grand Estates Homeowners Association's motion to dismiss, these parties will be referred to collectively as "Defendants" *except* where specificity of a defendant is required. Eric Tillet and James Tillet are no longer parties to the instant action as per Court Order dated January 14, 2010. Thereafter, Tilcon Leasing, L.L.C. was dismissed from the above styled action via Court Order dated May 25, 2010.

February 17, 2010 at p. 4 ¶ 15-16). Estate Road is alleged to be not only under the care, custody and control of Defendant Daly and Defendant Virgin Grand, but also owned jointly and severally by said parties. (Plaintiff's Third Amended Complaint dated February 17, 2010 at p. 3 ¶ 9).

As the deceased was attempting to reverse the cement "Mack" truck downhill on Estate Road in the direction of Plot No. 34, the vehicle slid off an embankment and rolled over onto its "cab" approximately one hundred and fifty feet (150ft). (Plaintiff's Third Amended Complaint dated February 17, 2010 at p. 3 ¶ 10). Mr. Haile Edgings was immediately crushed to death. (Plaintiff's Third Amended Complaint dated February 17, 2010 at p. 3 ¶ 10). However, Kennedy Crawford remained pinned between the truck's driver seat and the vehicle's steering wheel. (Plaintiff's Third Amended Complaint dated February 17, 2010 at p. 3 ¶ 10). Unable to move or escape, hot oil from the truck's engine continuously poured on the deceased. (Plaintiff's Third Amended Complaint dated February 17, 2010 at p. 3 ¶ 10). The deceased and Mr. Haile Edgings were both pronounced "dead" at the scene by an emergency medical technician at approximately 1:10 p.m. (Plaintiff's Third Amended Complaint dated February 17, 2010 at p. 3 ¶ 11). At approximately 4:35 p.m., the body of Kennedy Crawford was removed from the truck and transported by the police from St. John to the Roy Lester Schneider Hospital (hereafter "RLSH"). (Plaintiff's Third Amended Complaint dated February 17, 2010 at p. 3 ¶ 12).

Having failed to maintain Plot No. 34 located at Virgin Grand Estates St. John, Virgin Islands safe for the delivery of concrete, Plaintiff alleges that the collective acts of the Defendants were willful, wanton, reckless, outrageous, and grossly negligent. (Plaintiff's Third Amended Complaint dated February 17, 2010). Further, Plaintiff avers that the Defendants' collective actions and/or inactions were the proximate cause(s) of the death of Kennedy Crawford. (Plaintiff's Third Amended Complaint dated February 17, 2010). Hence, Plaintiff asserts that it is entitled to damages under *both* 5 V.I.C. § 76 and 5 V.I.C. § 77. (Plaintiff's Third Amended Complaint dated February 17, 2010).

On August 6, 2009, counsel for Defendants Daly and Virgin Grand filed a motion to dismiss several claims in Plaintiff's Third Amended Complaint, to wit: (i) all damage claims related to 5 V.I.C. § 77, (survival statute), including alleged pain and suffering of the deceased and mental

70

anguish; and (ii) all claims for punitive damages. On August 25, 2009, Plaintiff filed an Opposition to Defendants' motion to dismiss, after which, counsel for Defendants Daly and Virgin Grand filed a Reply on September 3, 2009. Defendants RTI Concrete, L.L.C. d/b/a Centerline Concrete, Tilcon Leasing, LLC, Waterford Land Development, L.L.C. and Peter Fabbio have joined in the motion to dismiss.

## II. STANDARD OF REVIEW FOR A MOTION TO DISMISS

In deciding a motion to dismiss, "all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991) (citation omitted). *See also McTernan v. City of York, Penn.*, 577 F.3d 521, 525 (C.A. 3 Pa. 2009). In addition to the complaint itself, the court can review documents attached to the complaint and matters of public record. *Lum v. Bank of America*, 361 F.3d 217, 221 n. 3 (3d Cir. 2004). A court *may* also take judicial notice of a prior judicial opinion. *McTernan*, 577 F.3d at 525. Accordingly, the Defendants' motion to dismiss Plaintiff's Third Amended Complaint must be reviewed in light of the U.S. Supreme Court's recent holding regarding motions to dismiss in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In that opinion, the Supreme Court clarified and expanded the scope of its prior opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), by emphatically ruling that *Twombly* was not limited to just antitrust complaints but included the standard applicable to review all complaints. *McTernan*, 577 F.3d at 530. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955). Moreover, the Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Elaborating on the new standard, the Court further held that, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). Given the foregoing, in ruling upon the Defendants' motion to dismiss, this Court will be governed by the standard and case law recited herein.

## III. ANALYSIS

The issues to be resolved by this Court are: (1) whether 5 V.I.C. § 76 (wrongful death statute), *prior* to the 2001 amendments, was in direct conflict with 5 V.I.C. § 77 (survival statute) thus precluding a plaintiff from pleading and recovering under both statutes in one cause of action; (2) whether the 2001 amendments allow a plaintiff to plead and recover under both 5 V.I.C. § 76 (wrongful death statute) and 5 V.I.C. § 77 (survival statute) in one cause of action; and (3) whether Plaintiff's claims for damages under 5 V.I.C. § 77 are recoverable post 2001 amendments.

### A. PRIOR TO THE 2001 AMENDMENTS, 5 V.I.C. § 76 (WRONGFUL DEATH STATUTE) WAS IN DIRECT CONFLICT WITH 5 V.I.C. § 77 (SURVIVAL STATUTE) AND PRECLUDED A PLAINTIFF FROM RECOVERING UNDER BOTH STATUTES IN ONE CAUSE OF ACTION.

The differing interpretations of 5 V.I.C. § 76 and 5 V.I.C. § 77 by the parties have raised the issue as to what effect, if any, the 2001 amendments had on the respective statutes. Resolution of this issue can only be reached after the Court thoroughly examines the language(s) of 5 V.I.C. § 76 and 5 V.I.C. § 77 *prior to* and *after* the 2001 amendments.

Until the 2001 amendments, the provisions of 5 V.I.C § 76 and 5 V.I.C. § 77 were incongruent. Specifically, 5 V.I.C. § 76(d) (wrongful death statute) stated, in pertinent part:

> When a personal injury to the decedent **results** in his death, **no action for the personal injury shall survive**, and **any such action pending at the time of death shall abate**.

In sharp contrast, 5 V.I.C. § 77 (survival statute) stated, in pertinent part:

> A thing in **action arising out of a wrong which results in physical injury** to the person or out of a statute imposing liability for such injury **shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action.**

Because 5 V.I.C. § 76 and 5 V.I.C. § 77 appeared to be irreconcilable prior to the 2001 amendments, courts were left to their own devices when determining the interplay between wrongful death and survival actions. Reso-

72

lution on the issue remained unsettled and applicable case law was unpredictable and in a constant state of flux.

*Mingolla v. Minnesota Mining and Mfg. Co.*, 893 F. Supp. 499, 507-08 (D.V.I. 1995) was one of the cases prior to the 2001 amendments that squarely dealt with the interplay between 5 V.I.C. § 76 and 5 V.I.C. § 77 and best illustrated the extent of the dilemma the court faced when determining whether damages under 5 V.I.C. § 76 and 5 V.I.C. § 77 could co-exist in one cause of action. In *Mingolla,* the wife and children of a deceased patient brought a products liability and wrongful death action against the manufacturer of a surgical pin which had been implanted in the deceased patient's body. *Mingolla,* 893 F. Supp. at 499. On the heels of an appointment of a personal representative for the deceased patient's estate, an amended complaint was filed and the manufacturer moved to dismiss alleged "unactionable" claims. *Mingolla,* 893 F. Supp. at 499. In 1995 before the 2001 amendments, the District Court, Chief Judge Moore presiding, held, *inter alia,* that the deceased patient's estate *could not* recover under the survival statute (5 V.I.C. § 77) because the complaint did not assert alternative causes of action under both 5 V.I.C. § 76 and 5 V.I.C. § 77. *Mingolla,* 893 F. Supp. at 499. Significantly, the court reasoned that 5 V.I.C. § 76 should be liberally construed consistent with Florida's Wrongful Death Act because the former was "copied virtually *verbatim*" from the latter. *Mingolla,* 893 F. Supp. at 503-504.

Florida's Wrongful Death Act reads in pertinent part:

> **When a personal injury to the decedent results in death, no** *action for the personal injury shall survive***, and** *any such action pending at the time of death shall abate.*

When the legislature of a state adopts a statute which is identical or similar to one in effect in another state or country, the courts of the adopting state usually adopt the original jurisdiction's construction.[3] 2B Norman J. Singer

---

[3] Statutes do not have to be identical for the rule to apply. 2B Norman J. Singer and J.D. Shambie Singer, *Sutherland Statutory Construction: Statutes and Statutory Construction* § 52:2 (7th ed. 2008). (*See also Hurt v. New York Life Ins. Co.*, 53 F.2d 453 (C.C.A. 10th Cir. 1931)). Rather, the presumption arises given the "similarity of the language, the established character of the decisions in the jurisdiction from which the language was adopted and the presence or lack of other indicia of intention." 2B Norman J. Singer and J.D. *Sutherland Statutory Construction*: Shambie Singer, *Statutes and Statutory Construction* § 52:2 (7th ed.

73

and J.D. Shambie Singer, *Sutherland Statutory Construction: Statutes and Statutory Construction* § 52:2 (7th ed. 2008). (*See also Cathcart v. Robinson*, 30 U.S. 264, 8 L. Ed. 120 (1831); *Willis v. Eastern Trust & Banking Co.*, 169 U.S. 295, 18 S. Ct. 347, 42 L. Ed. 752 (1898); *James v. Appel*, 192 U.S. 129, 24 S. Ct. 222, 48 L. Ed. 377 (1904); *Shannon v. U.S.*, 512 U.S. 573, 114 S. Ct. 2419, 129 L. Ed. 2d 459 (1994)).

The fact that a statute is almost a literal "carbon" copy of a statute of a "sister state" is persuasive evidence of a practical reenactment of said statute and it is therefore proper to resort to the decision of the "sister state's" statutory construction. (*See Schwartz v. Oberweis*, 826 F. Supp. 280 (N.D. Ind. 1993); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275 (S.D. N.Y. 1998)). Since the adopting state generally accepts the construction of the adopted statute,[4] when the V.I. Legislature mimicked and/or "tracked" Florida's Wrongful Death Act, the V.I. courts were constrained to adopt Florida's statutory construction and interpretation of those statutes.

Applying the foregoing, *Mingolla, prior* to the 2001 amendments, properly construed the Virgin Islands' wrongful death statute and held that all survivors and beneficiaries pursuing an action for injuries *resulting in death* must do so under 5 V.I.C. § 76 *exclusively. Mingolla*, 893 F. Supp. at 507. However, "where plaintiffs seek to recover damages for the decedent but the relationship between the injury and the death is tenuous or uncertain, such as where there is an intervening cause of death, the survivors *must* consolidate any claims on behalf of the decedent under the survival statute with the estate's [wrongful death] claims." *Mingolla*, 893 F.Supp. at 507. The court in *Mingolla* likened a plaintiff's options under 5 V.I.C. § 76 to strategic "betting" where he/she can " 'hedge [his/her] bets' by pleading *alternative*, inconsistent causes of action, to wit: a cause of action under the survival statute (which assumes that plaintiff's injuries did not result in his death) and a cause of action under [the] Virgin Islands Wrongful Death Act (for injuries resulting in the decedent's death). *Mingolla*, 893 F. Supp. at 507. Consequently, the court

---

2008). (*See also Carolene Products Co. v. U.S.*, 323 U.S. 18, 65 S. Ct. 1, 89 L. Ed. 15, 155 A.L.R. 1371 (1944)).

[4] 2B Norman J. Singer and J.D. Shambie Singer, *Sutherland Statutory Construction: Statutes and Statutory Construction* § 52:2 (7th ed. 2008). (*See also Commonwealth of Pennsylvania v. Brown*, 260 F. Supp. 323 (E.D. Pa. 1966)).

held that plaintiff(s) would only be able to recover under one cause of action. *Mingolla*, 893 F. Supp. at 508. In other words, a plaintiff would have to elect between his/her remedies. *Id.*

Prior to the 2001 amendments, *Mingolla* represented the then "climate" with respect to a plaintiff's ability to recover damages under both 5 V.I.C. § 76 and 5 V.I.C. § 77 in one cause of action. Accordingly, a plaintiff, prior to the 2001 amendments, *was precluded* from recovering under both statutes in one cause of action, *even if* the origins of the alleged injuries were unrelated.

### B. IN LIGHT OF THE 2001 AMENDMENTS, A PLAINTIFF *IS* ALLOWED TO PLEAD AND RECOVER UNDER BOTH 5 V.I.C. § 76 (WRONGFUL DEATH STATUTE) AND 5 V.I.C. § 77 (SURVIVAL STATUTE) IN ONE CAUSE OF ACTION.

On or about July 18, 2001, obviously rejecting the statutory construction of Florida's Wrongful Death Act, the Virgin Islands Legislature, enacted significant amendments to 5 V.I.C. § 76 and 5 V.I.C. § 77. As a result, the Virgin Islands were no longer bound by Florida's statutory construction and interpretation. Specifically, the amended statutes now read in pertinent parts:

> When a personal injury to the decedent results in his death, *any action for the personal injury shall survive, whether or not filed at the time of death, and shall not abate*. (*See* 5 V.I.C. § 76(d)).

> A thing in *action arising out of a wrong which results in physical injury to the person, or out of a statute imposing liability for such injury shall not abate by reason* of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason *of the death of the person injured* or of any other person who owns any such thing in action. . . . *the damages recoverable for such an injury may include loss of earnings and expenses sustained or incurred as a result of the injury may include damages for pain, suffering and disfigurement, or punitive or exemplary damages, or prospective profits or earnings after the date of death.*[5] (*See* 5 V.I.C. § 77).

---

[5] *Prior to the 2001 amendments, the only damages that could be recovered under Section 77* were for loss of earnings, expenses incurred and injuries sustained by the deceased prior to

The 2001 amendments not only expressed the V.I. Legislature's total rejection of the court imposed interpretation of 5 V.I.C. § 76 and 5 V.I.C. § 77 but also reflected the legislature's resolve to be unshackled and extricated from Florida's interpretation as required by the rules of statutory construction. Once 5 V.I.C. § 76 and 5 V.I.C. § 77 were amended, V.I. courts were free to apply its own statutory construction and interpretation rather than the construction and interpretation of a foreign state.

Undaunted by the 2001 amendments, Defendants Daly and Virgin Grand point this Court to and erroneously rely upon the holdings of *Mingolla, supra,* and *Fleming ex rel Fleming v. Whirlpool Corp.,* 301 F. Supp. 2d 411, 45 V.I. 439 (D.V.I. 2004) for relief and, ultimately, the dismissal of the Plaintiff's claims under 5 V.I.C. § 77.

In *Fleming,* Leona Rouse and her son Gregory Earl Fleming were injured by an explosion at No. 133 Estate Mahogany, St. Thomas, U.S.V.I on *December 18, 2000. Fleming ex rel. Fleming,* 301 F. Supp. 2d at 412. The Fire Marshal determined that a leak in the propane gas line next to the stove caused the explosion. *Fleming ex rel. Fleming,* 301 F. Supp. 2d at 412. Leona Rouse later died from her injuries on *January 14. 2001. Fleming ex rel Fleming,* 301 F. Supp. 2d at 412.

On February 1, 2001, G. Vernon Fleming ("Fleming") filed a negligence action in the St. Croix Division of the District Court against the owners of the apartment on behalf of his son and his son's deceased mother. *Fleming ex rel. Fleming,* 301 F. Supp. 2d at 412. Fleming later amended his complaint to add Whirlpool Corporation as a defendant for wrongful death and damages pursuant to 5 V.I.C. § 76. Thereafter, the case was transferred to the St. Thomas-St. John Division of the District Court and docketed as Civ. No. 2001-0128M/B. *Fleming ex rel. Fleming,* 301 F. Supp. 2d at 412.

On August 20, 2001, Fleming sued Whirlpool Corporation separately under Civ. No. 2001-145. *Fleming ex rel. Fleming,* 301 F. Supp. 2d at 412. On September 5, 2001, Fleming amended the complaint in the action docketed Civ. No. 2001-145. *Fleming ex rel. Fleming,* 301 F. Supp. 2d at 412. Specifically, Fleming amended Counts II and IV of the complaint to request damages under 5 V.I.C. § 77. *Fleming ex rel. Fleming,* 301 F. Supp. 2d at 412.

---

his death and *did not include damages for pain, suffering and disfigurement, punitive and/or exemplary damages, prospective profits or earnings after the date of death.*

Given the existing case law surrounding torts committed *prior to the 2001 amendments*, the court in *Fleming* ultimately held that "damages for [personal] injury and death [are] limited under Virgin Islands law to remedies provided in [the] wrongful death statute and [do] not include certain personal injury damages." *Fleming ex rel Fleming*, 301 F. Supp. 2d at 411. Consistent with the pre-amended version of 5 V.I.C. § 77, the court also held that damages under 5 V.I.C. § 77 for the decedent's pain and suffering as well as punitive and/or exemplary damages could not be recovered. *Fleming ex rel. Fleming*, 301 F. Supp. 2d at 414. Citing *Mingolla*, the *Fleming* court reasoned that "under the statutory scheme, relief can only be granted pursuant to either section 76 or 77, but not both, because each section governs a different factual scenario." *Fleming ex rel. Fleming*, 301 F. Supp. 2d at 413. The court further reasoned that "if the tortfeasor's wrong did not cause the death, plaintiffs recover under section 77." *Fleming ex rel. Fleming*, 301 F. Supp. 2d at 413. However, "[i]f the tortfeasor's wrong did cause the death, plaintiffs must recover damages under section 76." *Fleming ex rel. Fleming*, 301 F. Supp. 2d at 413 citing *Mingolla v. Minnesota Mining and Mfg. Co.*, 893 F. Supp. 499, 507 (D.V.I. 1995).[6]

Clinging both *Mingolla* and *Fleming* close to their chests, Defendants tenaciously argue that when "negligence results in death, the wrongful death statute applies ONLY and damages are limited to those enumerated in the wrongful death statute." (*See* Defendants Daly's and Virgin Grand's Motion to Dismiss dated August 6, 2009 at p.4).[7]

---

[6] The Court acknowledges that *Fleming's* sentiments regarding the intervening 2001 amendments were as follows: "Nothing in the Legislature's recent amendments to sections 76 and 77, made effective on July 18, 2001, changed [the] structural principle of the statutory scheme." *Fleming ex rel Fleming*, 301 F. Supp. 2d at 413. However, the court's *sentiments and/or statements were merely dicta because the cause of action in Fleming predated the 2001 amendments.*

[7] It is important to note that *Fleming* conceded the far-reaching effects of the 2001 amendments. Specifically, *Fleming* admitted that the 2001 amendments made it possible for "any action for personal injuries [to survive] when death results from the tort." (citations omitted). *Fleming's* "concession" deflates Defendants' arguments that 5 V.I.C. § 76 is the *only* applicable statute and that Plaintiff has created an impermissible "hybrid" cause of action by asserting claims under both 5 V.I.C. § 76 and 5 V.I.C. § 77 in its Third Amended Complaint. Specifically, Defendants contend that Plaintiff's claims under 5 V.I.C. § 77 are impermissible because the decedent's injuries resulted in his death and there was (were) no intervening cause(s) of death.

On the other hand, the Plaintiff herein strenuously opposes Defendant Daly's and Virgin Grand's motion to dismiss arguing that the Virgin Islands Legislature's amendments to 5 V.I.C. § 76 and 5 V.I.C. § 77 enacted on or about *July 18, 2001* were "significant" and operated to overrule *Mingolla*.[8] (*See* Plaintiff's Opposition to Defendants' Motion to Dismiss dated August 25, 2009 at p. 4).

Anchored steadfast to the holdings in *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 575, 94 S. Ct. 806, 39 L. Ed. 2d 9 (1974)[9] and *Calhoun v. Yamaha Motor Corp., USA*, 40 F.3d 622 (3d Cir. 1999), Plaintiff asserts that the United States Supreme Court and Third Circuit have recognized that wrongful death and survival claims are *separate and distinct claims that can be maintained in one cause of action*. Plaintiff therefore argues that it can recover damages under both 5 V.I.C. § 76 and 5 V.I.C. § 77. (*Cf. Calhoun v. Yamaha Motor Corp., USA*, 40 F.3d 622 (3d Cir. 1999)).

Contrary to Defendants' assertions and notwithstanding Defendants' additional authority[10] for their contentions, *Fleming* is inapplicable[11] because the cause(s) of action in *Fleming* arose December 18, 2001 and January 14, 2001, respectively, *before* the 2001 amendments, and the

---

[8] On or about July 18, 2001, *Fleming* had not been ruled upon.

[9] Superseded by statute as stated in *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S. Ct. 317, 112 L. Ed. 2d 275 (1990).

[10] This Court acknowledges that on February 18, 2010, counsel for Defendants Waterford Land Development, LLC and Peter Fabbio filed a Notice with the Court referring this Court to *Hamilton v. Dowson Holding Company, Inc.*, 51 V.I. 619 (D.V.I. 2009) as an additional supporting authority for the pending motion to dismiss various claims within the Plaintiff's Complaint. *Hamilton*, however, as admitted by defense counsel, merely adopts the reasoning of *Fleming*. Counsel for Defendants Daly and Virgin Grand also relies on the Memorandum Opinion and Order issued by the Hon. James S. Carroll III in the matter styled and docketed *Alfred v. St. Lucie, Sr. and Bellows International, Ltd.*, Super. Ct. Civ. No. ST-06-CV-542 at pp. 5-6. However, that opinion relies essentially on *Fleming*, a case that arose *prior* (emphasis added) to the 2001 amendments.

[11] The Court respectfully declines to "follow-in tow" of *Fleming for any post 2001 amendment cases*. While *Fleming* was decided in January of 2004, the *personal injuries giving rise to the cause of action occurred* on or about December 18, 2000, *prior to the July 18, 2001 amendments*. Therefore, *Flemine was bound by the law in effect at the time the cause of action arose* and correctly relied upon the *Mingolla* decision. (*See Atkinson v. Attorney General of U.S.*, 479 F.3d 222, 226 (3d Cir. 2007)) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994)).

plain meaning and intent of the amended statutes [5 V.I.C. § 76 and 5 V.I.C. § 77] yield a different conclusion than in *Mingolla* and *Fleming*.

█ In its analysis on whether the 2001 amendments could have applied "retroactively" in *Fleming*, the Court is guided by the U.S. Supreme Court's two (2) prong test recited in *Landgraf, supra.* In *Landgraf*, the U.S. Supreme Court held that whenever a court must determine whether a civil statute should be applied retroactively, the first question is whether Congress has expressly provided that the statute should be retroactive. *Landgraf*, 511 U.S. at 280. If the answer to the aforesaid question is "yes," the inquiry ends. *Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 160 (3d Cir. 1998). If the statute lacks such an expressed statement, the question becomes whether the normal rules of statutory construction "unequivocally *remove* the possibility of retroactivity." *Mathews*, 161 F.3d at 160. If a retroactive effect is present, a strong presumption *against* (emphasis added) applying the statute retroactively must be employed. *Mathews*, 161 F.3d at 161.

█ In the case *sub judice*, the post-amended versions of 5 V.I.C. § 76 and 5 V.I.C. § 77, as written, are bereft of any statement(s) expressing that the statute should be applied retroactively. Further, the normal rules of statutory construction "*do not unequivocally remove the possibility of retroactivity.*" Accordingly, there is a strong presumption against applying the post-amended versions of 5 V.I.C. § 76 and 5 V.I.C. § 77 retroactively to *Fleming*. Moreover, new legal consequences would impermissibly attach to the cause(s) of action that arose prior to the amendments. *A fortiori*, the 2001 amendments could *not* have been permissibly applied to *Fleming* retroactively.

█ Since the holding in *Fleming* could not have interpreted the 2001 amendments to 5 V.I.C. § 76 and 5 V.I.C. § 77, interpretation of the amended statute(s) must start afresh. *Basic rules of statutory construction give the most guidance in that regard.*[12] V.I. CODE ANN. tit. 1 § 42 states in pertinent part:

> Words and phrases shall be read with [sic] their context and shall be construed according to the common and approved usage of the English language.

---

[12] The "borrowed statute" rule was no longer applicable after the 2001 amendments.

Moreover, the starting point in interpreting a statute is the language of the statute itself. (*See American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S. Ct. 1534, 1537, 71 L. Ed. 2d 748 (1982); *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S. Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Therefore, it is to be presumed that "the legislative purpose is expressed by the ordinary meaning of the words used," *Richards v. United States*, 369 U.S. 1, 9, 82 S. Ct. 585, 591, 7 L. Ed. 2d 492 (1962), and if the statutory language is clear, it is not necessary to examine the legislative history. (*See TVA v. Hill*, 437 U.S. 153, 184 n. 29, 98 S. Ct. 2279, 2296 n. 29, 57 L. Ed. 2d 117 (1978)). Interpretation of a statute is essentially a question of intention and where the legislative purpose is couched in plain unambiguous language, the courts are not at liberty to modify the expression. (*Cf. Charles v. Charles*, 788 F.2d 960 (3d Cir. 1986); *Port Construction Co. v. Government of the Virgin Islands*, 359 F.2d 663, 5 V.I. 549 (3d Cir. 1966)).

■ Applying the basic rules of statutory construction to 5 V.I.C. § 76 and 5 V.I.C. § 77 *after the 2001 amendments*, could not lead to the conclusion that the wrongful death statute is the *exclusive* remedy of an estate when, as in the case *sub judice*, the decedent dies of personal injuries alleged to have been caused by a defendant(s). V.I. CODE ANN. tit. 5 § 76(d) states, "[w]hen a personal injury to the decedent results in his death, *any action for the personal injury shall survive*." Additionally, V.I. CODE ANN. tit. 5 § 77 makes it abundantly clear that an "action arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury *shall not abate by reason . . . of the death of the person injured. . . .*" Given the surfeit of cases by the United States Supreme Court on the issue of statutory construction, the plain meaning of a statute is controlling, absent ambiguity. The provisions of 5 V.I.C. § 76 and 5 V.I.C. § 77 are expressed in plain unambiguous language. Words used within the statutes, along with the basic provisions of the Federal Rules of Civil Procedure,[13] all support a finding that Plaintiff *can* (emphasis added) plead and recover damages under *BOTH* 5 V.I.C. § 76 and 5 V.I.C. § 77, as long as it is not duplicative regarding the same beneficiary.

---

[13] According to FED. R. CIV. P. 18(a), "[a] party asserting a claim, counterclaim, cross-claim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."

■■ Furthermore, the Court cannot ignore the 2001 amendments and regard same as "hollow" legislation because legislative intent is the polestar by which courts must be guided with respect to statutory construction and interpretation. In light of the 2001 amendments, a holding consistent with *Fleming* would be erroneous. Under current Virgin Islands law, when negligence by a defendant(s) causes death, certain beneficiaries represented by plaintiff (the decedent's personal representative, administrator/administratrix or executor/executrix) may or may not be restricted to the damages listed under 5 V.I.C. § 76. Reading restrictive language into 5 V.I.C. § 76 would be a "tight-fisted" interpretation of the law and would go against the spirit of "liberal construction."[14] *See Ehrlich v. Merritt*, 96 F.2d 251 (3d Cir. 1938) (holding that wrongful death statutes, "being remedial, must be liberally construed, and that the courts interpreting them should at all times seek to 'suppress the mischief and advance the remedy.' "). (*See also Skovgaard v. The Tungus*, 252 F.2d 14 (3d Cir. 1957); *Richardson v. Knud Hansen Memorial Hosp.*, 744 F.2d 1007 (3d Cir. 1984)).

■ Additionally, the U.S. Supreme Court has held the following: "In matters of statutory construction the duty of this Court is to give effect to the intent of Congress, and in doing so our first reference is of course to the literal meaning of the words employed." *Flora v. United States*, 357 U.S. 63, 65, 78 S.Ct. 1079, 1081, 2 L.Ed.2d 1165 (1958). (*See also West v. Bowen*, 879 F.2d 1122, 1133 (3d Cir. 1989)). (*Cf. Murrell v. People of the Virgin Islands*, 54 V.I. 338 (V.I. 2010) (quoting *Gov't of the V.I v. Knight*, 28 V.I. 249, 259, 989 F.2d 619 (3d Cir. 1993))). Therefore, a court should not adopt an interpretation of a statute that contradicts its plain text unless "it is uncontested that legislative intent is at odds with the literal terms of the statute." *Gilbert v. People*, 52 V.I. 350, 357 (V.I. 2009) (quoting *Morgan v. Gay*, 466 F.3d 276, 278 (3d Cir. 2006)). (*See also Murrell v. People of the Virgin Islands*, 54 V.I. 338 (V.I. 2010)).

Obviously, the amendments to 5 V.I.C. § 76 and 5 V.I.C. § 77 in 2001 were conscious acts by the V.I. Legislature that allowed both statutes to co-exist in one cause of action. As a result, the carefully crafted amendments could be deemed as having placed a decedent's right to

---

[14] 5 V.I.C. § 76(a) unambiguously states in pertinent part: "Subsections (b) through (j) of this section are remedial and shall be liberally construed."

damages "on an even keel" with that of a comatose person, who technically "survives" his/her injuries. Hence, a tortfeasor/wrongdoer, after the 2001 amendments, would no longer fare better with respect to damages when the victim of the tort died. Consider the following side-by-side comparisons of the *pre-amended* and *post-amended* versions of the now "co-existing"[15] statutes:

| PRE-2001 AMENDMENTS | POST-2001 AMENDMENTS |
|---|---|
| *5 V.I.C. § 76* | *5 V.I.C. § 76* |
| **Legislative Intent** | **Legislative Intent** |
| (a) It is the public policy of the Territory to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Subsections (b) through (j) of this section are remedial and *shell* be liberally construed. | (a) It is the public policy of the Territory to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Subsections (b) through (j) of this section are remedial and *shell* be liberally construed. |
| **Definitions** | **Definitions** |
| (b) As used in this section: | (b) As used in this section: |
| (1) "Survivors" means the decedent's spouse, *minor children*, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters. It includes the illegitimate child of a mother, but not the illegitimate *child of the father* unless the father has recognized a responsibility for the child's support. | (1) "Survivors" means the decedent's spouse, *children*, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters. It includes the illegitimate child of a mother, but not the illegitimate *child of the father unless the father has recognized a* responsibility for the child's support. |
| (2) "Minor children" means unmarried children under eighteen (18) years of age. | (2) "Minor children" means unmarried children under eighteen (18) years of age. |
| (3) "Support" includes contributions in kind as well as money. | (3) "Support" includes contributions in kind as well as money. |

[15] After the 2001 amendments, *both* 5 V.I.C. § 76 and 5 V.I.C. § 77 were able to co-exist in one cause of action. Also note that the bold and underlined words in the side-by-side comparisons represent *before* and *after* the 2001 amendments.

| PRE-2001 AMENDMENTS | POST-2001 AMENDMENTS |
|---|---|
| (4) "Services" means tasks, usually of a household nature, regularly performed by the decedent that will be a necessary expense to the survivors of the decedent. These services may vary according to the identity of the decedent and survivor and shall be determined under the particular facts of each case.<br><br>(5) "Net accumulations" means the part of the decedent's expected new business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of his estate if he had lived his normal life expectancy. Net business or salary income is the part of the decedent's probable gross income after taxes excluding income from investments continuing beyond death, that remains after deducting the decedent's personal expenses and support of survivors excluding contribution in kind.<br><br>**Right of action**<br>(c) When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or watercraft that would have been liable in damages if death had not ensued shall be liable for damages | (4) "Services" means tasks, usually of a household nature, regularly performed by the decedent that will be a necessary expense to the survivors of the decedent. These services may vary according to the identity of the decedent and survivor and shall be determined under the particular facts of each case.<br><br>(5) "Net accumulations" means the part of the decedent's expected new business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of his estate if he had lived his normal life expectancy. Net business or salary income is the part of the decedent's probable gross income after taxes excluding income from investments continuing beyond death, that remains after deducting the decedent's personal expenses and support of survivors excluding contribution in kind.<br><br>**Right of action**<br>(c) When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or watercraft that would have been liable in damages if death had not ensued shall be liable for damages |

83

| PRE-2001 AMENDMENTS | POST-2001 AMENDMENTS |
|---|---|
| as specified in this section notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony. | as specified in this section notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony. |

**Parties**

(d) The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this section, caused by the injury to the decedent results in his death, ***no action for the personal injury shall survive and any such action pending at the time of death shall abate***. The wrongdoer's personal representative shall be the defendant if the wrongdoer dies before or pending the action. A defense that would bar or reduce a survivor's recovery if he were the plaintiff may be asserted against him, but shall not affect the recovery of any other survivor.

**Parties**

(d) The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this section, caused by the injury to the decedent results in his death, ***no action for the personal injury shall survive and any such action pending at the time of death shall abate***. The wrongdoer's personal representative shall be the defendant if the wrongdoer dies before or pending the action. A defense that would bar or reduce a survivor's recovery if he were the plaintiff may be asserted against him, but shall not affect the recovery of any other survivor.

**Damages**

(e) all potential beneficiaries of a recovery for wrongful death, including the decedent's estate, shall be identified in the complaint and their relationships to the decedent shall be alleged. Damages may be awarded as follows:

(1) Each survivor may recover the value of lost support and services from the date of the decendent's injury to his death, with interest, and future loss

**Damages**

(e) all potential beneficiaries of a recovery for wrongful death, including the decedent's estate, shall be identified in the complaint and their relationships to the decedent shall be alleged. Damages may be awarded as follows:

(1) Each survivor may recover the value of lost support and services from the date of the decendent's injury to his death, with interest, and future loss

84

| PRE-2001 AMENDMENTS | POST-2001 AMENDMENTS |
|---|---|
| of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probably net income available for distribution to the particular survivor, and the replace-ment value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivors and the decedent and the period of minority in the case of healthy minor children may be considered.<br><br>(2) The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury.<br><br>(3) *Minor children* of the decedent may also recover for lost parental companionship, instruction and guidance and for mental pain and suffering from the date of injury.<br><br>(4) Each parent of a deceased *minor child* may also recover for mental pain and suffering from the date of injury.<br><br>(5) Medical of funeral expenses due to the decedent's injury or death may be recovered by a survivor who has paid for them.<br><br>(6) The decedent's personal representative may recover for the decedent's estate the following:<br><br>(a) Loss of earnings of the deceased from the date of injury to the | of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probably net income available for distribution to the particular survivor, and the replace-ment value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivors and the decedent and the period of minority in the case of healthy minor children may be considered.<br><br>(2) The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury.<br><br>(3) *Minor children* of the decedent may also recover for lost parental companionship, instruction and guidance and for mental pain and suffering from the date of injury.<br><br>(4) Each parent of a deceased *minor child* may also recover for mental pain and suffering from the date of injury.<br><br>(5) Medical of funeral expenses due to the decedent's injury or death may be recovered by a survivor who has paid for them.<br><br>(6) The decedent's personal representative may recover for the decedent's estate the following:<br><br>(a) Loss of earnings of the deceased from the date of injury to the |

| PRE-2001 AMENDMENTS | POST-2001 AMENDMENTS |
|---|---|
| date of death, less lost support of survivors excluding contributions in kind, with interest. If the decedent's survivors include a surviving spouse or lineal decendants, loss of net accumulations beyond death and reduced to present value may also be recovered. | date of death, less lost support of survivors excluding contributions in kind, with interest. If the decedent's survivors include a surviving spouse or lineal decendants, loss of net accumulations beyond death and reduced to present value may also be recovered. |
| (b) Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent, excluding amoutns re-coverable under paragraph (5), above. | (b) Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent, excluding amoutns re-coverable under paragraph (5), above. |
| (c) Evidence of remarriage of the decedent's surviving spouse is admissible. | (c) Evidence of remarriage of the decedent's surviving spouse is admissible. |
| (7) All awards for the decedent's estate are subject to the claims of creditors who have complied with the requirements of probate law concerning claims. | (7) All awards for the decedent's estate are subject to the claims of creditors who have complied with the requirements of probate law concerning claims. |
| **Form of verdict** | **Form of verdict** |
| (f) The amounts awarded to each survivor and to the estate shall be stated separately in the verdict. | (f) The amounts awarded to each survivor and to the estate shall be stated separately in the verdict. |
| **Protection of minor and incompetents** | **Protection of minor and incompetents** |
| (g) The court shall provide protection for any amount awarded for the benefit of a minor child or an incompetent pursuant to the Virgin Islands guardianship law, Title 15, Virgin Islands Code. | (g) The court shall provide protection for any amount awarded for the benefit of a minor child or an incompetent pursuant to the Virgin Islands guardianship law, Title 15, Virgin Islands Code. |
| **Death of a survivor before judgment** | **Death of a survivor before judgment** |
| (h) a survivor's death before final judgment shall limit the survivor's | (h) a survivor's death before final judgment shall limit the survivor's |

| PRE-2001 AMENDMENTS | POST-2001 AMENDMENTS |
|---|---|
| recovery to lost support and services to the date of his death. The personal representative shall pay the amount recovered to the personal representative of the deceased survivor. | recovery to lost support and services to the date of his death. The personal representative shall pay the amount recovered to the personal representative of the deceased survivor. |
| **Court approval of settlement**<br>(i) While an action under this section is pending, no settlement as to amount or apportionment among the beneficiaries which is objected to by any survivor or which affects a survivor who is a minor or an incompetent shall be effective unless approved by the court. | **Court approval of settlement**<br>(i) While an action under this section is pending, no settlement as to amount or apportionment among the beneficiaries which is objected to by any survivor or which affects a survivor who is a minor or an incompetent shall be effective unless approved by the court. |
| **Litigation expenses**<br>(j) Attorney's fees and other expenses of ligitation shall be paid by the personal representative and deducted from the awards to the survivors and the estate in proportion to the amount awarded to them, but expenses incurred for the benefit of a particular survivor or the estate shall be paid from their awards. | **Litigation expenses**<br>(j) Attorney's fees and other expenses of ligitation shall be paid by the personal representative and deducted from the awards to the survivors and the estate in proportion to the amount awarded to them, but expenses incurred for the benefit of a particular survivor or the estate shall be paid from their awards. |
| PRE-2001 AMENDMENTS | POST-2001 AMENDMENTS |
| *5 V.I.C. § 77* | *5 V.I.C. § 77* |
| A thing in action arising out of a wrong which results in physical injury to the person or out of a statute | A thing in action arising out of a wrong which results in physical injury to the person or out of a statute |

| PRE-2001 AMENDMENTS | POST-2001 AMENDMENTS |
| --- | --- |
| imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action. When the person entitled to maintain such an action dies before judgment, the damages recoverable for such injury *shall be limited to* loss of earnings and expenses sustained or incurred as a result of the injury by the deceased prior to his death, and *shall not include damages for pain, suffering and desfigurement, nor punitive or exemplary damages, nor prospective profits or earnings after the date of death*. The damages recovered shall form part of the estate of the deceased. Nothing is this section shall be construed as making such a thing assignable. | imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action. When the person entitled to maintain such an action dies before judgment, the damages recoverable for such injury *may include loss of earnings and expenses sustained or incurred as a result of the injury may include damages for pain, suffering and disfigurement, or punitive or exemplary damages, or prospective profits or earnings after the date of death*. The damages recovered shall form part of the estate of the deceased. Nothing is this section shall be construed as making such a thing assignable. |

Synthesizing the foregoing, the strategic and carefully crafted language in the 2001 amendments makes it crystal clear that the intent of the V.I. Legislature was to open doors of recovery to a decedent's estate that were once shut or only left slightly ajar. No longer would tortfeasors get a free "pass" nor would wrongful conduct be trivialized merely because the victim did not "survive" his/her injuries. Because "a picture is worth a thousand words," consider the following hypotheticals:

| HYPOTHETICALS:[16] | |
|---|---|
| *Hypo #1*: A→B[17]; B survives and subsequently *dies from P/I*[18] caused by A.<br>**Before 2001 amendment(s)**: B's personal representative could file for relief under 5 V.I.C. § 76 **ONLY!**<br>**After 2001 amendment(s)**: B's personal representative could file for relief under 5 V.I.C. § 76 AND 5 V.I.C. § 77 because each section has distinct causes of action and damages.<br><br>*Hypo #2*: A→B; B *dies on impact from P/I* caused by A.<br>**Before 2001 amendment(s)**: B's personal representative could file for relief under 5 V.I.C. § 76 **ONLY!**<br>**After 2001 amendment(s)**: B's personal representative could file for relief under 5 V.I.C. § 76 **ONLY!** In this scenario, 5 V.I.C. § 76 provides the only relief because *B did not survive P/I caused by A.*<br><br>*Hypo #3*: A→B; B survives P/I caused by A and subsequently *dies from an unrelated cause not involving a tort* (i.e. "B" is struck by lightning, drowns and/or commits suicide).<br>**Before 2001 amendment(s)**: B's personal representative could file for relief under 5 V.I.C. § 77 **ONLY!** | |

---

[16] The amendments to 5 V.I.C. § 76 and 5 V.I.C. § 77 in 2001 impacted potential relief given to beneficiaries under the respective statutes. After the 2001 amendments, 5 V.I.C. § 76 significantly opened its doors for potential beneficiaries by changing the term "minor children" to "children." Whereas, 5 V.I.C. § 77 "swung open" its door to damages!

[17] "→" stands for the phrase "personally injures"

[18] "P/I" stands for "personal injury"

| Hypotheticals:[16] | |
|---|---|
| **After 2001 amendment(s):** B's personal representative could file for relief under 5 V.I.C. § 77 **ONLY!**<br><br>***Hypo #4***: A→B; B *survives P/I caused by A* **BUT** subsequently *dies from a P/I caused by "C."*[19]<br>With respect to tortfeasor "A". . .<br>**Before 2001 amendment(s):** B's personal representative could file for relief under 5 V.I.C. § 77 **ONLY!**<br>**After 2001 amendment(s):** B's personal representative could file for relief under 5 V.I.C. § 77 ONLY! In this scenario, 5 V.I.C. § 77 provides the only relief for "B" because he/she survived the P/I caused by "A."<br><br>With respect to tortfeasor "C". . .<br>**Before 2001 amendment(s):** B's personal representative could file for relief under 5 V.I.C. § 76 **ONLY!**<br>**After 2001 amendment(s):** B's personal representative could file for relief under 5 V.I.C. § 76 **AND** 5 V.I.C. § 77! **(See Hypo #1).** | . |

■ Having premised their arguments on antiquated case law interpreting a statute that has since been amended, Defendants' arguments and conclusions are fatally flawed. Accordingly, the Court finds that following the 2001 amendments, a plaintiff *is* now allowed to plead and recover under both 5 V.I.C. § 76 (wrongful death statute) and 5 V.I.C. § 77 (survival statute) in one cause of action.

---

[19] Whenever there are multiple tortfeasors, each tortfeasor and/or his/her wrongful conduct must be analyzed separately as indicated in the preceding hypotheticals.

## C. Plaintiff's Claim For Damages Under 5 V.I.C. § 77 (Survival Statute) Should Not Be Dismissed As A Matter Of Law.

█ It is well-settled that 5 V.I.C. § 76 and 5 V.I.C. § 77 are separate claims from which distinct measures of damages flow and the "plain meaning" of the words contained in the statutes does not require that 5 V.I.C. § 76 yield to 5 V.I.C. § 77 or vice-versa. Furthermore, it is no secret that 5 V.I.C. § 77 now allows a decedent's estate to recover "loss of earnings and expenses sustained or incurred as a result of the injury . . . damages for pain, suffering and disfigurement, or *punitive* or exemplary[20] damages, or prospective profits or earnings after the date of death." Here, Plaintiff "seeks damages for pain and suffering, mental anguish and related damages of [the decedent] after the accident occurred but before [the decedent] died as authorized by 5 V.I.C. § 77." (*See* Plaintiff's Third Amended Complaint dated February 17, 2010 at p. 6 ¶ 22). *Ergo*, the damages requested in Plaintiff's Third Amended Complaint including punitive damages *are* permitted under the amended provisions of 5 V.I.C. § 77.

Given Defendants' intransigent stance and refusal to acknowledge the substantial changes made to 5 V.I.C. § 77,[21] as well as the amendments to

---

[20] The Defendants requested that all punitive damages claims in the Third Amended Complaint be dismissed as being contrary to law.

[21] The difference(s) between the pre-amended version of 5 V.I.C. § 77 and the post-amended version of same is (are) not only unmistakably clear but also far-reaching. *Prior to the 2001 amendments.* 5 V.I.C. § 77 stated in pertinent part: "When the person entitled to maintain such an action dies before judgment, the damages recoverable for such injury *shall be limited to loss of earnings and expenses sustained or incurred as a result of the injury by the deceased prior to his death, and shall not include damages for pain, suffering and disfigurement, nor punitive or exemplary damages, nor prospective profits or earnings after the date of death.*" *After the 2001 amendments*, 5 V.I.C. § 77 states in pertinent part: "When the person entitled to maintain such an action dies before judgment, the damages recoverable for such injury may include loss of earnings and expenses sustained or incurred as a result of the injury may include damages for pain, suffering and disfigurement, or punitive or exemplary damages, or prospective profits or earnings after the date of death."

5 V.I.C. § 76,[22] it is understandable that Defendants were unable to recognize that the damages claimed under 5 V.I.C. § 77 by the Plaintiff are now allowable pursuant to Act 6413, made effective July 18, 2001. Although the Defendants may be in "denial" regarding the force and effect of the plain and unambiguous statutory language of the 2001 amendments, the Court *cannot* be similarly misled. Accordingly, Plaintiff's claims for damages under 5 V.I.C. § 77 are viable claims that are authorized by law.

## IV. CONCLUSION

■ Prior to the 2001 amendments, 5 V.I.C. § 76 and 5 V.I.C. § 77 appeared irreconcilable and the then existing case law, albeit unsettled, *precluded* a plaintiff from recovering under both 5 V.I.C. § 76 and 5 V.I.C. § 77 in one cause of action. In light of the 2001 amendments and the "plain meaning" of the words used therein, Plaintiff *is* now allowed to plead and recover under both 5 V.I.C. § 76 (wrongful death statute) and 5 V.I.C. § 77 (survival statute) in one cause of action. Moreover, Plaintiff is no longer precluded from asserting punitive and/or "exemplary" damages, recovery for pain and suffering, disfigurement, prospective profits or earnings[23] under 5 V.I.C. § 77. Accordingly, Defendants' Motion to Dismiss, dated August 6, 2009, shall be **DENIED**.

---

[22] *Before the 2001 amendments*, 5 V.I.C. § 76 stated in pertinent part, "[w]hen a personal injury to the decedent results in his death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." *After the 2001 amendments* however, 5 V.I.C. § 76 states in pertinent part, "[w]hen a personal injury to the decedent results in his death, any action for the personal injury shall survive, whether or not filed at the time of death, and shall not abate."

[23] The list of damages recoverable under 5 V.I.C. § 77 may not be exhaustive since the statute now reads: . . . "the damages recoverable for such injury *may include*. . ." [this language implies the phrase "but not limited to"].