**JEVON GERALD, as lawful Successor of the ESTATE OF LUCIEN EVANS ENGLAND, SR., Plaintiff**

**v.**

**R.J. REYNOLDS TOBACCO COMPANY, as successor by merger to LORILLARD TOBACCO COMPANY and LORILLARD, INC., Defendant**

**CHRISTIAN BROWN, as the Executor of the ESTATE OF PATRICE HALE BROWN, Plaintiff**

**v.**

**R.J. REYNOLDS TOBACCO COMPANY, as successor by merger to LORILLARD TOBACCO COMPANY and LORILLARD, INC., Defendants**

Case Nos. ST-10-CV-631, ST-10-CV-692

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

July 5, 2017

443

445

446

447

J. RUSSELL B. PATE, ESQ., The Pate Law Firm, St. Thomas, USVI; GORDON C. RHEA, ESQ., Gordon C. Rhea, P.C., St. Thomas, USVI; MICHAEL D. WEISMAN, ESQ., Missouri City, TX, *For Plaintiffs*.

CHAD C. MESSIER, ESQ., Dudley, Topper & Feuerzeig, LLP, St. Thomas, USVI; SIMON HANSEN, ESQ., JOHN M. WALKER, ESQ., Jones Day, LLP, Atlanta, GA; MICHELLE T. DELLA GUARDIA, ESQ., Jones Day, LLP, Miami, FL, *For Defendants*.

DUNSTON, *Judge*

## MEMORANDUM OPINION

### (July 5, 2017)

Pending before the Court are Defendant's June 3, 2016, Motions to Dismiss. Because the Amended Complaints fail to state claims for negligent performance of a voluntary undertaking, the Court will grant Defendant's motions as to Count II of the Amended Complaints, but deny the motions as to the remaining claims.

### RELEVANT PROCEDURAL AND FACTUAL HISTORY

This tobacco liability litigation arises from Complaints filed by Lucien Evans England, Sr., and Patrice Hale Brown on November 10, 2010, and December 6, 2010, against Lorillard Tobacco Company, Lorillard, Inc.

(collectively "Lorillard"), and other Defendants.[1] The original Plaintiffs (collectively "Decedents") having died during the course of litigation,[2] their children now pursue their interests, namely, Jevon Gerald on behalf of Lucien Evans England, Sr. and Christian Brown on behalf of Patrice Hale Brown.[3] The interests of Lorillard are now represented by its successor by merger, Defendant R.J. Reynolds Tobacco Company ("Reynolds").[4]

This case was briefly removed to the United States District Court of the Virgin Islands, during which time Lorillard filed Answers to the Complaints in the federal court proceedings.[5] The cases were remanded to the Superior Court on September 19, 2011. On August 7, 2014, the Court permitted pre-trial consolidation of both Plaintiffs' cases.

Plaintiffs have sought to amend their Complaints several times during the course of these proceedings.[6] The most recent amendments were made after the Court granted Plaintiffs leave to amend by Order entered

---

[1] England filed a First Amended Complaint on December 6, 2010 (amended as of right within 21 days of service of the initial Complaint, which was filed on November 10, 2010), *Gerald v. R.J. Reynolds Tobacco Company* ("*Gerald*"), Case No. ST-10-CV-631.

[2] Pl. Gerald's November 9, 2015, Am. Compl. ¶ 8 (England died on November 30, 2012); Pl. Brown's November 9, 2015, Am. Compl. (Decedent Brown died on November 22, 2011).

[3] *See* January 24, 2013, Order (*Gerald*) (granting the motion of England's son and named executor, Jevon Gerald, to continue the litigation as England's personal representative); April 2, 2012, Order, *Brown v. R.J. Reynolds Tobacco* ("*Brown*"), Case No. ST-10-CV-692 (granting the motion of Brown's son to substitute parties as the lawful successor of Brown's Estate).

[4] *See* Pl. Gerald's November 9, 2015, Am. Compl.; Pl. Brown's November 9, 2015, Am. Compl.

[5] *See England v. Lorillard, Inc.*, Civil No. 2011-007, 3:11-cv-00007-CVG-RM (Def. Lorillard Tobacco Company's January 10, 2011, Answer, ¶ 240; Def. Lorillard, Inc. January 10, 2011, Answer, ¶ 240). While the matter was pending in the federal court, Plaintiff England sought leave to amend the Complaint on March 7, 2011, upon which the District Court did not rule.

[6] In their original Complaints, both Plaintiffs asserted individual counts against Defendants for strict liability, breach of duty of good faith and fair dealing, negligent performance of a voluntary undertaking, negligence and gross negligence, breach of express warranty, failure to warn, unjust enrichment, intentional and negligent infliction of emotional distress, and "fraud based claims" of fraudulent concealment, fraudulent misrepresentation, civil conspiracy to misrepresent and commit fraud, and aiding and abetting — civil liability. *See* Pl. Brown's November 10, 2010, Compl.; Pl. England's December 6, 2010, First Am. Compl. Plaintiff England, later substituted by Gerald, filed a Substituted Second Amended Complaint on February 27, 2012 with leave of Court, which asserted five (5) counts for strict products liability, negligent performance of a voluntary undertaking, negligence, breach of

on November 16, 2015.[7] In these Amended Complaints, which remain the operative pleadings to date, Plaintiffs added Reynolds as a Defendant, in its capacity as Lorillard's successor by merger, and reincorporated the fraud based claims that were originally alleged against Lorillard, but which Plaintiffs had sought to withdraw in prior proposed amendments.[8] The Complaints, as amended,[9] assert individual counts for strict products liability (Count I), negligent performance of a voluntary undertaking (Count II), negligence (Count III), breach of implied warranty of merchantability (Count IV), fraudulent concealment and

---

implied warranty of merchantability, and deceptive and unfair business practices, but omitted individual counts for the "fraud based claims." *See* February 23, 2012, Order (*Gerald*) (granting England leave to amend the Complaint); Pl. England's February 27, 2012, Am. Compl. Lorillard Tobacco Company challenged this amended Complaint in an April 6, 2012, Motion to Dismiss. Def. Lorillard's April 6, 2012, Mot. to Dismiss (*Gerald*). After the substitution of England by Gerald upon England's death, the Complaint was amended, *inter alia*, to add claims for wrongful death and/or survival. January 24, 2013, Order (*Gerald*); Pl. Gerald's February 6, 2013, Mot. for Leave to File Am. Compl. for Wrongful Death; April 22, 2013, Order (*Gerald*) (granting Gerald leave to file Amended Complaint). On May 3, 2013, this amended Complaint was challenged by Lorillard Tobacco Company in a Motion to Dismiss. Def.'s May 3, 2013, Mot. to Dismiss (*Gerald*). With respect to *Brown*, Plaintiff sought leave to amend the Complaint in a manner similar to the amendments in *Gerald*, but Plaintiff Brown's motions were never ruled upon by the Court and thus the proposed Amended Complaints never became the operative pleadings in this case. *See* Pl. Brown's June 7, 2012 & May 30, 2014, Mots. for Leave to Amend Compl. *Brown* was not assigned to undersigned until August 7, 2014, when *Brown* and *Gerald* were consolidated for pre-trial purposes.

[7] Reynolds challenged this Order by filing an Emergency Motion to Vacate the Court's Orders Granting Plaintiffs' Motions for Leave to Amend Their Respective Complaints on November 24, 2015. Initially, the Court held its decision on Reynolds' motion in abeyance in order to give Reynolds the opportunity to respond to Plaintiff's Motion to Amend the Complaint by filing an Opposition thereto. *See* December 21, 2015, Mem. Op. & Order. Reynolds filed an Opposition on December 30, 2015, to which Plaintiffs timely replied on January 11, 2016. After reviewing these filings, the Court denied Reynolds' Emergency Motion to Vacate the Court's Orders Granting Plaintiffs' Motions for Leave to Amend Their Respective Complaints. *See* April 26, 2016, Mem. Op. & Order.

[8] Pl. England's February 27, 2012, Am. Compl.; Pl. Brown's June 7, 2012, Mot. for Leave to Amend Compl.

[9] Most recently, on November 9, 2015, both Plaintiffs sought leave to amend their Complaints, which the Court granted by Order signed on November 10, 2015 and entered on November 16, 2015. Though challenged by Defendants, the Court declined to set aside that Order and accepted Plaintiffs' November 9, 2015, amended Complaints in a Memorandum Opinion entered on April 26, 2016. *See* Def.'s November 24, 2015, Emergency Motion to Vacate the Court's Orders Granting Plaintiffs' Motions for Leave to Amend Their Respective Complaints; December 21, 2015, Mem. Op. & Order; Def.'s December 30, 2015, Opp'n to Plaintiffs' Mots. for Leave to Amend their Complaints.

misrepresentation (Count V), civil conspiracy (Count VI), wrongful death and or survival (VII).[10]

On June 3, 2016, Reynolds filed these Motions to Dismiss. Plaintiffs filed a Consolidated Partial Opposition to Defendant's Motion[s] to Dismiss on July 5, 2016,[11] to which Reynolds timely replied on July 22, 2016.[12]

Reynolds has also moved for summary judgment in both cases and Plaintiffs have moved to consolidate the cases for trial,[13] both of which motions remain pending and will be decided by the Court subsequently. Jury selections in these actions are scheduled to commence on July 31, 2017.[14]

## STANDARD

Under V.I. R. Civ. P. 12(b)(6), a defendant may test the sufficiency of the pleadings against preliminary defenses by seeking dismissal for the plaintiff's "failure to state a claim upon which relief can be granted." The pleading requirements of V.I. R. Civ. P. 8 "require a complaint to set forth a plausible claim for relief, thus allowing courts to dismiss, under Rule 12(b)(6), complaints that fail to meet that

---

[10] *See* November 9, 2015, Second Amended Complaint for Wrongful Death and/or Survival Claims in *Gerald*, Case No. ST-10-CV-631 ("Pl. Gerald's November 9, 2015, Am. Compl."); November 9, 2015, Amended Wrongful Death and or Survival Complaint in *Brown*, Case No. ST-10-CV-692 ("Pl. Brown's November 9, 2015, Am. Compl.").

[11] *See* Pls.' Consolidated Partial Opp'n to Defendant's Mot. to Dismiss Pls.' Wrongful Death and Survival Complaints ("Pls.' Joint Partial Opp'n to Def.'s Mot. to Dismiss").

[12] *See* June 10, 2016, Order (directing Plaintiffs to respond to Reynolds' Motions to Dismiss by July 1, 2016, and for Reynolds to reply by July 11, 2016); June 20, 2016, Order (extending deadline within which Reynolds was to reply to Plaintiffs' Oppositions to Reynolds' Motions to Dismiss to July 22, 2016). The record indicates that Plaintiffs filed their Opposition to Reynolds' Motions to Dismiss four days after the July 1, 2016, deadline. However, Reynolds has not objected to the timeliness of Plaintiffs' Oppositions. Considering this and the short delay, the Court will consider Plaintiffs' Opposition despite its untimeliness. *See Destin v. People of the V.I.*, 64 V.I. 465, 468 n.1 (V.I. 2016) (If the opposing party does not move to strike the response as untimely, "it waive[s] any objection to its timeliness" and the Superior Court has discretion to consider the untimely response) (citing *Joseph v. People*, 60 V.I. 338, 347 n.7 (V.I. 2013) (other citation omitted)).

[13] *See* Def.'s December 5, 2016, Mots. for Summ. J.; Pls.' June 6, 2016, Mot. to Consolidate Cases for Trial.

[14] June 1, 2016, Order.

standard."[15] According to the three-pronged analysis employed by the Supreme Court of the Virgin Islands in reviewing motions to dismiss based on Rule 12(b)(6):

> First, the court must take note of the elements a plaintiff must plead to state a claim so that the court is aware of each item the plaintiff must sufficiently plead. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. These conclusions can take the form of either legal conclusions couched as factual allegations or naked [factual] assertions devoid of further factual enhancement. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief. If there are sufficient remaining facts that the court can draw a reasonable inference that the defendant is liable based on the elements noted in the first step, then the claim is plausible.[16]

The Virgin Islands Supreme Court has further instructed that "[t]he plausibility determination is a 'context-based' determination which should be guided by the court's 'judicial experience and common sense.' "[17] "Plausibility requires that the plaintiff allege facts that are more than simply 'consistent with a defendant's liability' and must permit the court to infer more than the mere possibility of misconduct."[18]

■ "A motion to dismiss a complaint should be denied if the factual allegations are 'enough to raise a right to relief above the speculative level' "[19] and "give the defendant fair notice of what the . . . claim is and

---

[15] *Joseph v. Bureau of Corrections*, 54 V.I. 644, 649 (V.I. 2011) (applying FED. R. CIV. P. 8) (citations omitted). V.I. R. CIV. P. 8 and 12(b)(6) mirror FED. R. CIV. P. 8 and 12(b)(6) such that the standard delineated by Virgin Islands courts under the federal rules remains applicable.

[16] *Fleming v. Cruz*, 62 V.I. 702, 713-714 (V.I. 2015) (citing *Pollara v. Chateau St. Croix, LLC*, 58 V.I. 455, 471 (V.I. 2013) (other citations omitted)).

[17] *Joseph*, 54 V.I. at 650 (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)).

[18] *Id.* (citing *Fowler*, 578 F.3d at 211).

[19] *Peters v. V.I. Water & Power Auth.*, 58 V.I. 49, 54 (V.I. Super. Ct. 2013) (citations omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

the grounds upon which it rests."[20] Only after satisfying this multi-step analysis can a party survive a motion to dismiss under Rule 12(b)(6).

## ANALYSIS

At the outset, the Court notes that while Reynolds filed separate Motions to Dismiss in *Brown* and *Gerald*, Reynolds submits the same argument in both motions.[21] As a result, the Court will consider the questions of law posed by the motions together, but will separately analyze the facts unique to each case in determining whether the Amended Complaints state claims upon which relief can be granted.

### I. Breach of Implied Warranty of Merchantability (Count IV).

Reynolds argues that Plaintiffs' claims for beach of the implied warranty of merchantability must be dismissed as time-barred because they were asserted for the first time after the expiration of the applicable four-year statute of limitations set forth in 11A V.I.C. § 2-725(1) of the Virgin Islands Uniform Commercial Code ("U.C.C.").[22] In opposition, Plaintiffs argue that the applicable statute of limitations is 5 V.I.C. § 31(5) for tort actions since Plaintiffs' claims arise from personal injuries, but even if 11A V.I.C. § 2-725(1) applies, the claims are not time-barred because both statutes of limitation are tolled by the discovery rule or equitable tolling doctrine for fraudulent concealment.[23]

#### A. Applicable Statute of Limitations.

■ This analysis regarding the applicable statute of limitations for Count IV of the Amended Complaints pertains to Plaintiffs' claims for breach of the implied warranty of merchantability as they relate to Plaintiffs' survival action for the personal injuries suffered by the

---

[20] *Twombly*, 550 U.S. at 555; *see Fleming*, 62 V.I. at 710 (applying the standard articulated in *Twombly*); V.I. R. Civ. P. 8(a)(2) ("a pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief — because this is a notice pleading jurisdiction").

[21] *See* Pls.' Joint Partial Opp'n to Def.'s Mot. to Dismiss, p. 1 ("Defendant filed separate motions to dismiss . . . [but] the three counts that are the subject of those motions are identical").

[22] Def.'s Mot. to Dismiss (*Brown*), p. 12; Def.'s Mot. to Dismiss (*Gerald*), p. 12.

[23] Pls.' Joint Partial Opp'n to Def.'s Mot. to Dismiss, p. 5.

Decedents.[24] Personal injury actions are subject to the two-year statute of limitations proscribed under 5 V.I.C. § 31(5)(A),[25] and "[t]he injured person has two years from the date of injury to file a lawsuit."[26] On the other hand, "[a]n action for breach of any contract for sale" arising under the Virgin Islands U.C.C. is subject to the four-year statute of limitations set forth under 11A V.I.C. § 2-725, which begins to run "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach" and "[a] breach of warranty occurs when tender of delivery is made . . . ."[27]

The Virgin Islands U.C.C. governs "contracts for the sale of goods"[28] and imposes an implied warranty of merchantability "if the seller is a merchant with respect to goods of that kind[,]" as follows:

(2) Goods to be merchantable must be at least such as

---

[24] A survival action, which is based on the personal injuries suffered by the decedent, may only be brought if the decedent's underlying personal injury claims were viable at the time of death, *e.g.*, the statute of limitations had not yet expired, in which case the survival action must be brought within one year of the decedent's date of death. 5 V.I.C. § 37(a) ("If a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced by his personal representatives, after the expiration of the time and within one year from his death"); 5 V.I.C. § 77 ("A thing in action arising out of a wrong which results in personal injury to the person . . . shall not abate . . . by reason of the death of the person injured"); *Der Weer v. Hess Oil V.I. Corp.*, 61 V.I. 87, 116 (Super. Ct. 2014) ("Read together, section 77 declares that personal injury claims do not abate when a person dies, but instead, pursuant to section 37(a), continue for a year after the person's death. . . . The injured person has two years from the date of injury to file a lawsuit. If he dies before the two years has passed, section 37(a) gives his personal representative a year from the date of his death to pursue the claim. Depending on how long someone lives after being injured, the length of time to file a lawsuit may vary").

[25] *See Santiago v. V.I. Hous. Auth.*, 57 V.I. 256, 272-73 (V.I. 2012).

[26] *Der Weer*, 61 V.I. at 116.

[27] 11A V.I.C. § 2-725(1)-(2).

[28] 11A V.I.C. § 2-102 ("Unless the context otherwise requires, this article applies to transactions in goods"); 11A V.I.C. § 2-106(1) ("In this article unless the context otherwise requires 'contract' and 'agreement' are limited to those relating to the present or future sale of goods. 'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time. A 'sale' consists in the passing of title from the seller to the buyer for a price (§ 2-401). A 'present sale' means a sale which is accomplished by the making of the contract"); 11A V.I.C. § 2-105(1) (" 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action").

454

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.[29]

■ As Reynolds points out, Plaintiffs point to no case law from the Virgin Islands that suggests claims for breach of the implied warranty of merchantability, which would otherwise arise under the Virgin Islands U.C.C., sound in tort merely because the claims are premised on

---

[29] 11A V.I.C. § 2-314(1)-(2); 11A V.I.C. § 2-104(1) (" 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill"). In full, 11A V.I.C. § 2-314 provides:

(1) Unless excluded or modified (§ 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

 (a) pass without objection in the trade under the contract description; and
 (b) in the case of fungible goods, are of fair average quality within the description; and
 (c) are fit for the ordinary purposes for which such goods are used; and
 (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
 (e) are adequately contained, packaged, and labeled as the agreement may require; and
 (f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (§ 2-316) other implied warranties may arise from course of dealing or usage of trade.

the personal injuries sustained by the claimant as a result of the defendant's breach.[30] On the contrary, courts in the Virgin Islands have long applied the Virgin Islands U.C.C. to breach of the implied warranty of merchantability claims that arise from the claimant's purchase of goods, even where the action is based on the personal injuries sustained by the claimant.[31] In fact, the plain language of another provision of the Virgin Islands U.C.C., namely 11A V.I.C. § 2-318, indicates that the Legislature intended for personal injury actions involving breach of warranty claims arising from a contract for the sale of goods to fall within the purview of the Virgin Islands U.C.C. Under 11A V.I.C. § 2-318, express and implied warranties under the Virgin Islands U.C.C. extend to "any person who may reasonably be expected to use, consume or be affected by the goods and *who is injured in person* by breach of the warranty."[32] The United States District Court of the Virgin Islands has

---

[30] Def.'s Reply, p. 5. *See* Pls.' Joint Partial Opp'n to Def.'s Mot. to Dismiss, p. 6.

[31] *See, e.g., Bronson v. Club Comanche*, 286 F. Supp. 21, 21-22, 6 V.I. 683 (D.V.I. 1968) (applying the Virgin Islands U.C.C. to plaintiffs' claim for the breach of the implied warranty of merchantability when the action was premised on the personal injuries sustained by plaintiffs as a result of contracting fish poisoning from fish purchased at defendant's restaurant); *McFarlane ex rel. Allen v. Pueblo Supermarkets of St. Thomas, Inc.*, 8 V.I. 155 (Mun. Ct. St. T. and St. J. 1970) (applying the Virgin Islands U.C.C. to plaintiff's claim for the breach of the implied warranty of merchantability when the action was premised on the personal injuries sustained by plaintiff and her children after consuming canned goods, purchased from defendant, that made them sick); *White v. S & E Bakery*, 26 V.I. 87, 88-89, 90 (Terr. Ct. 1991) (considering plaintiff's claims for "breach of implied and express warranties" under the Virgin Islands U.C.C. because "the purchase of pear nectar by Plaintiff constituted a 'contract for the sale of goods' within the meaning of the" Virgin Islands U.C.C., notwithstanding that plaintiff sought damages for the personal injuries she sustained as a result of drinking the pear nectar purchased from defendant); *Martin v. Powermatic, Inc.*, 2008 U.S. Dist. LEXIS 44211, at *18 (D.V.I. June 4, 2008), *aff'd* 359 Fed. Appx. 345, 346 (3d Cir. 2009) (applying the Virgin Islands U.C.C. to plaintiff's claim for the breach of the implied warranty of merchantability when the action was premised on the personal injuries sustained by plaintiff as a result of plaintiff cutting off three of his fingers with a saw purchased from defendant); *see also Chapman v. Cafe Madeleine*, 39 V.I. 161, 164 (Terr. Ct. 1998) (applying the Virgin Islands U.C.C. to plaintiff's claim for the breach of the implied warranty of merchantability when action was premised on the emotional distress and "bodily injury" suffered by plaintiff as a result of finding plastic in soup she had consumed and purchased from defendant; ultimately concluding that plaintiff's claim failed because plaintiff did not prove she suffered bodily injury).

[32] 11A V.I.C. § 2-318 (emphasis added).

concluded that Section 2-318 "limit[s] recovery by third parties to damages for personal injuries"[33] and this Court is inclined to agree.

 The Court is also guided by the "well-established rule of statutory construction . . . that 'the more specific statute takes precedence over the more general one, unless it appears the Legislature intended for the more general to control,' or for both statutes to apply concurrently."[34] It is axiomatic that "[t]he primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend."[35] The Virgin Islands Code's general statute of limitations provision, 5 V.I.C. § 31, specifically provides that, "except when, in special cases, a different limitation is prescribed by statute," a two-year statute of limitation applies in actions "for any injury to the person or rights of another not arising on contract" and a six-year statute of limitations applies in actions involving a contract.[36] The proscription of a different statute of limitations in 11A V.I.C. § 2-725(1) indicates that the Legislature did not intend for the statutes of limitation in the Virgin Islands U.C.C. and the Code's general statute of limitations to apply concurrently, but rather for 11A V.I.C. § 2-725(1) to apply to the exclusion of 5 V.I.C. § 31.[37] "This conclusion is [further] bolstered by the purpose of the [Virgin Islands] U.C.C. '[t]o introduce a uniform statute of limitations for sales contracts, thus eliminating jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale.' "[38] An application of the statute of limitations applicable to general tort claims "would thwart the [Virgin Islands] U.C.C.'s purpose to provide uniform limitations periods for claims involving contracts for the sale of goods," including

---

[33] *Hedges v. United States*, 2003 U.S. Dist. LEXIS 23383, at *11 (D.V.I. June 30, 2003) (citing *Paramount Aviation Corp. v. Agusta*, 288 F.3d 67, 75 (3d Cir. 2002)).

[34] *Haynes v. Ottley*, 61 V.I. 547, 561 (V.I. 2014) (citing *V.I. Pub. Servs. Comm'n; v. V.I. Water & Power Auth.*, 49 V.I. 478, 485 (V.I. 2008)).

[35] *Der Weer v. Hess Oil V.I. Corp.*, 64 V.I. 107, 123 (Super. Ct. 2016) (*"Der Weer II"*) (quoting *Dublin v. V.I. Tele. Corp.*, 15 V.I. 214, 232 (V.I. Terr. Ct. 1978)).

[36] 5 V.I.C. § 31(3)(A), (5)(A).

[37] *Accord MRL Dev. I, LLC v. Whitecap Inv. Corp.*, 823 F.3d 195, 204, 64 V.I. 724 (3d Cir. 2016) (citing 5 V.I.C. § 31); *but see id.* at 203 (citing *White*, 26 V.I. at 88-89) (finding the plaintiff could go forward with claims under both the statutes of limitation proscribed in 11A V.I.C. § 2-725(1) and 5 V.I.C. § 31(3), but this finding was necessary since the claim qualified under the U.C.C.'s statute of limitations)).

[38] *MRL*, 823 F.3d at 204 (citing 11A V.I.C. § 2-725 cmt.).

cigarettes.[39] For these reasons, the Court concludes that claims for the breach of the implied warranty of merchantability involving contracts for the sale goods are subject to the four-year statute of limitations set forth in 11A V.I.C. § 2-725 of the Virgin Islands U.C.C.[40]

In their Amended Complaints, Plaintiffs claim that Lorillard, "as the manufacturer, seller, marketer and or distributor of Newport cigarettes, impliedly warranted that such cigarettes were merchantable and fit for the ordinary purposes for which they were intended" and "breached this warranty because the Newport cigarettes it manufactured, sold and distributed were defective, unmerchantable, unfit for the ordinary purposes for which they were intended and, on the contrary, were unreasonably dangerous to users and consumers[,]" which resulted in Decedents' personal injuries.[41] Clearly, any implied warranty of merchantability owed by Lorillard to Decedents derived from the sale of Newport cigarettes to Decedents, which is a "contract for the sale of goods," that falls under the Virgin Islands U.C.C.[42] Consequently, Plaintiffs' claims for breach of the implied warranty of merchantability are subject to the four-year statute of limitations set forth in 11A V.I.C. § 2-725.

Under 11A V.I.C. § 2-725, the four-year statute of limitations began to run on Plaintiffs' claims for breach of the implied warranty of merchantability "when tender of delivery [was] made."[43] Here, Plaintiff Brown alleges in the Amended Complaint that "[f]rom approximately 1960 to 1976, Patrice Hale Brown used and consumed the Newport cigarettes manufactured, sold and distributed by defendant" and that "Patrice Hale Brown contracted lung cancer and, on November 22, 2011, died . . . as a result of smoking the Newport cigarettes manufactured, sold, and distributed by defendant."[44] Drawing all reasonable inferences from

---

[39] *Id.*

[40] *Accord id.*; *Lukey v. Int'l Paint Co.*, 24 V.I. 300, 302 (D.V.I. 1989) (concluding the four-year statute of limitations under 11A V.I.C. § 2-725 applies to claims of breach of implied warranty of merchantability).

[41] Pl. Gerald's November 9, 2015, Am. Compl. ¶¶ 39-40, 36-43; Pl. Brown's November 9, 2015, Am. Compl. ¶¶ 38-39, 35-41.

[42] *Supra* n.28.

[43] 11A V.I.C. § 2-725(1)-(2).

[44] Pl. Brown's November 9, 2015, Am. Compl. ¶¶ 20-21.

the well-pled facts in favor of Plaintiff Brown, the last tender of delivery of Newport cigarettes to Decedent Brown occurred in 1976, and the statute of limitations expired in 1980.

As to Plaintiff Gerald, the allegations in the Amended Complaint are less clear. Plaintiff Gerald does not specify the exact year that England quit smoking Newport cigarettes, but alleges that "Lorillard introduced Newport cigarettes in or about 1957[,]" "England was constantly exposed to numerous Newport advertisements in the early 1960s as a child and teenager in New York City[,]" that "England began smoking Newport brand cigarettes and soon became addicted to smoking in his teens[,]" and "continued to smoke Newports for more than 40 years, and as a result developed two distinct cancers in his throat and bladder[,]" which "caused his death on November 30, 2012."[45] While the Court recognizes that prior versions of the Complaint specified that England "continued to smoke cigarettes from 1960 until November 2005[,]"[46] the Court must construe the facts alleged in the operative Amended Complaint, which fails to make this allegation. Nevertheless, the Court can reasonably infer from the factual allegations that England began smoking Newport cigarettes in 1965, the last date that can reasonably fall within "the early 1960s" time period alleged in the Amended Complaint, and continued to do so for forty years, or until 2005. If the last tender of delivery of Newport cigarettes to England occurred in 2005, the statute of limitations under 11A V.I.C. § 2-725 would have expired in 2009.

Because the Complaints were not filed by Plaintiffs until 2010, these actions are time-barred unless the statutes of limitation are tolled.

### B. Tolling Doctrines.

■ "Once a cause of action has accrued and the statutory period for bringing the action has expired, an injured party is barred from bringing suit unless the statute of limitations has been tolled."[47] There are two tolling doctrines at issue here, the discovery rule and the equitable tolling doctrine for fraudulent concealment.

---

[45] Pl. Gerald's November 9, 2015, Am. Compl. ¶¶ 8-9, 50, 33.

[46] Pl. England's December 6, 2010, First Am. Compl. ¶ 30.

[47] *Santiago*, 57 V.I. at 273 (citing *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991)) (internal quotation marks omitted).

### a. The Discovery Rule.

According to the Supreme Court of the Virgin Islands:

> The discovery rule tolls the statute of limitations when, despite the exercise of due diligence, the injury or its cause is not immediately evident to the victim. Under the discovery rule, the focus is not on the plaintiff's actual knowledge, but rather whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff. Because the application of the discovery rule rests on when a party knew or should have known of its injury, it is typically a question of fact.[48]

The parties dispute whether 11A V.I.C. § 2-725 permits an application of the discovery rule.[49] This dispute arises from the language of Section 2-725, which provides, in pertinent part, that:

> (2) A cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach*. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.
>
> . . .
>
> (4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this title becomes effective.[50]

In 1985, the Territorial Court concluded that the discovery rule does not apply to breach of contract actions under the Virgin Islands U.C.C.,[51] but the Supreme Court of the Virgin Islands has yet to address the issue.

---

[48] *United Corp. v. Hamed*, 64 V.I. 297, 305-06 (V.I. 2016) (citing *Santiago*, 57 V.I. at 273) (other citation omitted).

[49] Reynolds contends that 11A V.I.C. § 2-725(2) prohibits an application of the discovery rule for purposes of toiling the statute of limitations in 11A V.I.C. § 2-725(1), while Plaintiffs counter that tolling under the discovery rule is expressly permitted under 11A V.I.C. § 2-725(4). Def.'s Reply, p. 7; Pls.' Joint Partial Opp'n to Def.'s Mot. to Dismiss, p. 9.

[50] 11A V.I.C. § 2-725(2), (4) (emphasis added).

[51] *Fombrun v. Controlled Concrete Prods.*, 21 V.I. 578, 583 (Terr. Ct. 1985).

However, the United States Court of Appeals for the Third Circuit recently addressed the issue by performing statutory interpretation in *MRL Dev. I, LLC v. Whitecap Inv. Corp.*[52] There, the Third Circuit distinguished the discovery rule, which "focuses on the plaintiff's knowledge of injury," from "equitable tolling[, which] focuses on the time to bring an action despite discovery of the injury."[53] In construing Section 2-725(2) and (4), the Third Circuit determined that the statutory language evinced legislative intent for Section 2-725(2) to encompass the discovery rule and Section 2-725(4) to encompass equitable tolling doctrines, such as equitable estoppel,[54] which permits the tolling of the statute of limitations "where the defendant has attempted to mislead the plaintiff and thus prevent the plaintiff from suing on time."[55] As a result, the Third Circuit concluded that Section 2-725(2)'s "prohibition on considering the 'aggrieved party's lack of knowledge of the breach' " rendered the discovery rule inapplicable "to contract claims covered by the Virgin Islands U.C.C."[56]

 The Court is persuaded by the Third Circuit's reasoning in *MRL.* The express language of Section 2-725(2) clearly and unambiguously prohibits the Court from considering "the aggrieved party's lack of knowledge of the breach" when determining the accrual date for a cause of action for breach of contract under subpart (1).[57] To

---

[52] 823 F.3d at 204-06.

[53] *Id.* at 205 (citing *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 604 n. 2 (3d Cir. 2015)).

[54] *Id.*

[55] *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1389 (3d Cir. 1994); *see MRL*, 823 F.3d at 205 (citing *Oshiver*, 38 F.3d at 1390).

[56] *MRL*, 823 F.3d at 206.

[57] Statutory interpretation is governed by the "Rules of Construction." 1 V.I.C. §§ 41-52. The Supreme Court of the Virgin Islands has described the standard for statutory interpretation, as follows:

> "The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed. In analyzing a statutory scheme, we must give effect to every provision, making sure to avoid interpreting any provision in a manner that would render it — or another provision — wholly superfluous and without an independent meaning or function of its own. But even where a statutory scheme is plain and internally consistent, no statute should be read literally if such a reading is contrary to its objective [and] this Court must consider

construe Section 2-725(4) as allowing an application of the discovery rule would lead to absurd consequences by rendering subpart (2) "wholly superfluous and without an independent meaning or function of its own."[58] Further, such a reading would render Section 2-725 internally inconsistent, while the Third Circuit's construction harmonizes the provision. In these circumstances, judicial doctrines such as the discovery rule must yield to the will of the Legislature.[59] Consequently, the Court concludes that the discovery rule cannot be used to toll the four-year statute of limitations under 11A V.I.C. § 2-725.[60] However, because this conclusion does not preclude an application of the equitable tolling doctrine for fraudulent concealment under 11A V.I.C. § 2-725(4), the Court must consider whether the doctrine applies to toll the running of the statute of limitations on Plaintiffs' claims for breach of the implied warranty of merchantability.

### b. Equitable Tolling Doctrine for Fraudulent Concealment.

██ ██ With respect to the equitable tolling doctrine for fraudulent concealment, the concept is not provided for in the Virgin Islands Code and it has yet to be addressed by the Supreme Court of the Virgin Islands.[61] The Court recognizes that the Supreme Court of the Virgin Islands recently adopted equitable estoppel, but that concept "protects from harm an innocent party who reasonably relies upon the material misrepresentations of another"[62] and may be invoked for purposes of

---

whether applying the statute's literal language leads to . . . absurd consequences or is otherwise inconsistent with the Legislature's intent." *In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) (internal and other citations omitted).

[58] *In re L.O.F.*, 62 V.I. at 661 (citations omitted).

[59] *See Banks*, 55 V.I. at 979-80 ("[T]he will of the Legislature will generally prevail in the event of a conflict between a statute and a judicial decision") (citations omitted); *In re Joseph*, 65 V.I. 217, 229 (V.I. 2016) (The Court cannot, "under the pretext of statutory construction, read into the statute that which the legislature has not sought fit to include") (citations omitted).

[60] *Accord, MRL*, 823 F.3d at 206.

[61] *Id.* at 204 (noting that "neither the Virgin Islands legislature nor the Virgin Islands Supreme Court has provided the parameters for what constitutes 'the law on tolling' ").

[62] *Browne v. Stanley*, 66 V.I. 328, 333 (V.I. 2017) (In the Virgin Islands, equitable estoppel requires an asserting party to "demonstrate that (1) the party to be estopped made a material misrepresentation (2) that induced reasonable reliance by the asserting party and (3) resulted in the asserting party's detriment") (citations omitted).

tolling the statute of limitations "where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit."[63] In contrast, the equitable tolling doctrine for fraudulent concealment is "invoked in cases where a plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment[.]"[64] Here, Plaintiffs allege that they were ignorant of their causes of action because Lorillard's fraudulent concealment of "material facts" "confused or misled Plaintiffs' understanding of what caused their respective cancers."[65] Thus, Plaintiffs seek to invoke the equitable tolling doctrine for fraudulent concealment as opposed to equitable estoppel. Since the equitable tolling doctrine for fraudulent concealment derives from the common law and has neither been addressed by the Supreme Court of the Virgin Islands nor the Superior Court in accordance with *Banks*, the Court must perform the three-part analysis delineated in *Banks* in order to ascertain the parameters of the doctrine in the Virgin Islands.[66]

### i. *Banks* Analysis.

■ Under *Banks*, the Court must balance the following non-dispositive factors:

(1) whether any Virgin Islands courts have previously adopted a particular rule;

(2) the position taken by a majority of courts from other jurisdictions; and

---

[63] *Zeyer v. Board of Educ.*, 98 F. Supp. 3d 425 (D. Conn. 2015).

[64] *Id.*; *see* 51 AM. JUR. 2D *Limitation of Actions* § 153 (2017).

[65] Pls.' Joint Partial Opp'n to Def.'s Mot. to Dismiss, p. 9.

[66] As established in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 981-84 (V.I. 2011), and subsequent cases, "when confronted with an issue of Virgin Islands common law that . . . [the Supreme Court of the Virgin Islands] has not resolved — or that has been addressed only through erroneous reliance on former 1 V.I.C. § 4 — courts [in this Jurisdiction] must 'engage in a three-factor analysis: first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determining which common law rule is soundest for the Virgin Islands.' " *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014) (citing *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014); *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014); *Walters v. Walters*, 60 V.I. 768, 777 n.11 (V.I. 2014)).

(3) most importantly, which approach represents the soundest rule for the Virgin Islands.[67]

With respect to the first factor under *Banks*, whether any Virgin Islands courts have previously adopted a particular rule, Virgin Islands courts have considered the fraudulent concealment tolling doctrine in medical malpractice actions,[68] but those decisions involve an application of the doctrine as "a statutory construct"[69] under an express provision of the Virgin Islands Medical Malpractice Act.[70] Therefore, these cases do not provide a basis for considering the concept as a judicially created doctrine in non-medical malpractice cases. In one instance, the United States District Court of the Virgin Islands considered the "fraudulent concealment [tolling] doctrine," but that case involved an application of California law.[71] Finally, while this Court recently performed a *Banks*[72] analysis with respect to fraudulent concealment as an independent cause of action for purposes of imposing civil tort liability, the concept of fraudulent concealment as an equitable tolling doctrine was not addressed.[73]

---

[67] *Simon*, 59 V.I. at 613 (interpreting *Banks*); *Hamed*, 63 V.I. at 534-37 (discussing the evolution of *Banks* and its progeny).

[68] *See, e.g.*, *Frederick v. Ellet*, 2014 V.I. LEXIS 5, at *6 (V.I. Super. Ct. Feb. 14, 2014); *Warner v. Ross*, 164 Fed. Appx. 218, 220 (3d Cir. 2006) (rendered while serving as the *de facto* court of last resort in the Virgin Islands); *Simmons v. Martinez*, 45 V.I. 278, 284-85 (Terr. Ct. 2003); *Payne v. Gov't of the V.I.*, 44 V.I. 213, 217 (Terr. Ct. 2002).

[69] *Frederick*, 2014 V.I. LEXIS 5, at *5 ("[T]he 'fraudulent concealment' toiling doctrine is a statutory construct") (citations omitted).

[70] *See* 27 V.I.C. § 166d.

[71] *Gov't of the V.I. v. Lansdale*, 2009 U.S. Dist. LEXIS 92843, at *10 (D.V.I. Oct. 5, 2009) ("the Court will apply California law with regard to the statute of limitations issue"); Pls.' Joint Partial Opp'n to Def.'s Mot. to Dismiss, p. 10.

[72] *Infra* n.66.

[73] *See Gov't of the V.I. v. Takata Corp.*, 67 V.I. 316, 417 (Super. Ct. 2017) ("[T]he soundest rule for the Virgin Islands is: To state a claim for fraudulent concealment, a plaintiff must plead that: (1) the defendant concealed or suppressed a material fact; (2) the defendant had a duty to disclose the fact to the plaintiff; (3) the defendant knew or had reason to know that the material fact had been concealed or suppressed; (4) the defendant concealed or suppressed the material fact for the purpose of inducing the plaintiff to act or refrain from acting; and (5) the plaintiff suffered pecuniary loss caused by the his or her justifiable reliance on the concealed or suppressed material fact"). Other courts have distinguished fraudulent concealment as a tolling doctrine from fraudulent concealment as independent cause of action under a theory of tort liability. *Compare Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App.

The second factor under *Banks*, "determining the position taken by a majority of courts from other jurisdictions[,] directs the Superior Court to consider all potential sides of an issue by viewing the potentially different ways that other states and territories have resolved a particular question."[74] Apart from variations in phrasing, nearly all courts in other jurisdictions uniformly adhere to the same approach in defining the equitable tolling doctrine for fraudulent concealment, as follows: If a party through actual fraudulent concealment prevents another party from asserting his or her cause of action or from obtaining information about his or her cause of action, the time period will be tolled until the right of action is discovered or by the exercise of ordinary diligence should have been discovered, which occurs when the party becomes aware of sufficient facts to identify the particular cause of action at issue.[75] Similar to the discovery rule, "[a]t the point when the plaintiff discovers or should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim, the original statute of limitations begins to run anew, and the plaintiff must file his or her claim within the statutory limitations period."[76] Thus, "[t]he tolling will last as long as the plaintiff's reliance on the misrepresentations is reasonable."[77]

In determining the requisite "actual fraudulent concealment," some courts in other jurisdictions generally look to the state's law governing tort claims for fraudulent concealment and fraudulent misrepresentation.[78] However, courts differ as to the intent element in that some courts require the "actor [to] . . . have intended to prevent inquiry or knowledge of the injury[,]"[79] while other courts do "not require fraud in the strictest sense

---

2009) (reciting the elements for fraudulent concealment as an independent tort claim) with *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 462 (Tenn. 2012) (reciting the elements for establishing fraudulent concealment for the purposes of tolling the statute of limitations).

[74] *Connor*, 60 V.I. at 603 (citations omitted).

[75] AM. JUR. 2D, *supra* n.64, at §§ 162, 164; *see* Allan E. Korpela, *Fraud, misrepresentation, or deception as estopping reliance on statute of limitations*, 43 A.L.R.3d 429, 2b (2017).

[76] *Redwing*, 363 S.W.3d at 463; AM. JUR. 2D, *supra* n.64, at § 162.

[77] AM. JUR. 2D, *supra* n.64, at § 162.

[78] *See* AM. JUR. 2D, *supra* n.64, at § 162.

[79] *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 436 (D. Del. 1999) (applying Delaware law); *see Redwing*, 363 S.W.3d at 463.

465

encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception."[80]

██ Finally, the third factor under *Banks* requires the Court to adopt the soundest rule for the Virgin Islands. Considering the foregoing, the soundest rule for the Virgin Islands is:

> In order to toll the statute of limitations for fraudulent concealment, the plaintiff must allege and prove: (1) that the defendant affirmatively concealed, or failed to disclose despite a duty to do so, material facts critical to plaintiff's cause of action; (2) that the defendant knew or had reason to know that the material fact had been concealed or suppressed; (3) that the defendant's conduct prevented plaintiff from discovering the nature of the claim within the limitations period; and (4) that the plaintiff could not have discovered sufficient facts to identify the particular cause of action despite reasonable care and diligence.

These elements encompass the general standard governing equitable tolling for fraudulent concealment uniformly recognized by courts in other jurisdictions in the United States, thereby aligning the concept in the Virgin Islands with that which is broadly recognized throughout the country. Where courts in other jurisdictions differ, this rule encompasses the concepts that underlie common law claims for fraudulent misrepresentation, fraudulent concealment, and equitable estoppel in the Virgin Islands,[81] thus fostering consistency in the territory's application of principles pertaining to common law fraud. While this rule requires the plaintiff demonstrate some level of intent on the part of the defendant, this rule stops short of requiring the defendant to have specifically intended to prevent inquiry or knowledge of the injury by the plaintiff, as such a rigid requirement would unduly restrict the application of the tolling doctrine.

---

[80] AM. JUR. 2D, *supra* n.64, at § 164; *Hoppe v. Smithkline Beecham Corp.*, 437 F. Supp. 2d 331, 337 n.5 (E.D. Pa. 2006) (applying Pennsylvania law).

[81] *Big Bear Construction, Inc. v. Holford*, 2016 V.I. LEXIS 2, at *14-15 (V.I. Super. Ct. Jan. 15, 2016) (setting forth the elements for establishing claims for fraudulent and negligent misrepresentation claims in the Virgin Islands) (citing *Merchs. Commercial Bank v. Oceanside Vill., Inc.*, 64 V.I. 3, 17-22 (Super. Ct. 2015) (conducting the requisite analyses mandated in *Banks*, 55 V.I. 967 with respect to claims for fraudulent misrepresentation and negligent misrepresentation)); *Takata Corp.*, 67 V.I. at 414, 418 (conducting the requisite analysis mandated in *Banks*, 55 V.I. 967 with respect to a claim for fraudulent concealment); *Browne*, 66 V.I. at 333 (setting forth the elements required to establish equitable estoppel in the Virgin Islands).

The more lenient intent requirement set forth in the rule allows for greater flexibility in the application of the doctrine and best "promotes equity and justice by preventing one party from taking unfair advantage of another."[82] Finally, by requiring the plaintiff to exercise "reasonable care and diligence" to "discover sufficient facts to identify the particular cause of action," the rule mirrors the standard under the discovery rule, which fosters consistency in the application of tolling doctrines in the Virgin Islands, while also preserving the underlying purpose of statutes of limitation "to prevent undue delay in bringing suit" and the assertion of stale and neglected claims "so that the opposing party has a fair opportunity to defend."[83]

### ii. Sufficiency of the Complaint.

 In order to determine whether the fraudulent concealment tolling doctrine applies, the Court must ascertain the facts underlying Plaintiffs' claims for breach of the implied warranty of merchantability. "In order to recover on a claim for breach of the implied warranty of merchantability, a Plaintiff must demonstrate that: 1) an implied warranty of merchantability existed, 2) the warranty was broken by the seller, 3) the breach of the warranty proximately caused, 4) the loss sustained."[84] Accepting the well-pled factual allegations as true, the Complaint contains adequate facts to plausibly suggest that an implied warranty of merchantability existed by virtue of Decedents' purchasing Newport cigarettes sold by Lorillard, that the implied warranties were broken by Lorillard because they were not fit for the ordinary purposes for which the Newport cigarettes were used,[85] namely smoking, since they were addictive and contained carcinogens, which caused Decedents to develop cancer and die as a result thereof. Under the standard applicable to motions to dismiss, these facts, as pled, make a plausible showing of all

---

[82] *Browne*, 66 V.I. at 335.

[83] *Dublin*, 15 V.I. at 232; *see Der Weer II*, 64 V.I. at 123.

[84] *Charles v. Arcos Dorados USVI, Inc.*, 2016 V.I. LEXIS 113, at *6-7 (V.I. Super. Ct. Aug. 18, 2016) (citing 11A V.I.C. § 2-314 cmt. 13).

[85] *See* 11A V.I.C. § 2-314(2)(c).

essential elements of a claim for breach of the implied warranty of merchantability.[86]

As to whether the fraudulent concealment tolling doctrine applies, the following facts alleged in the Amended Complaints are relevant:

> "Lorillard marketed Newport as a 'fun cigarette' directed to an 'immature audience' in an effort to induce children and teenagers, . . . to begin smoking Newport cigarettes[,]" such as Decedents both of which began smoking Newport cigarettes as teenagers;[87] "Lorillard designed, manufactured and distributed Newport cigarettes to be addictive despite the fact that it knew they were carcinogenic"; Lorillard "intentionally misled, deceived and confused the public, including [Decedents], . . . regarding the overwhelming evidence that cigarette smoking causes fatal diseases" and "is addictive" by promising to "lead the effort to discover and disclose the truth about smoking and health," while "systematically suppress[ing] and conceal[ing] material information[,]" "wag[ing] an aggressive campaign of disinformation about the health consequences of cigarette smoking[,]" and employing "techniques to manipulate and control the nicotine delivery of its cigarettes so as to create and sustain addiction in smokers[,]" despite "know[ing], on the basis of industry and independent research, that the nicotine in its cigarettes is addictive" and publicly denying "that nicotine is addictive and that it manipulates the nicotine delivery of cigarettes."[88]

The allegations that Lorillard "intentionally misled, deceived and confused the public" are supported by specific facts outlined in the Amended Complaints.[89]

These factual allegations are sufficient to give rise to a reasonable inference that Lorillard knowingly and affirmatively concealed material

---

[86] Pl. Gerald's November 9, 2015, Am. Compl. ¶¶ 8-12, 20, 37-39, 42, 49-50; Pl. Brown's November 9, 2015, Am. Compl. ¶¶ 9-13, 21, 36-28, 41, 47.

[87] In Plaintiff Gerald's Amended Complaint, Plaintiff also alleges that Lorillard specifically targeted African-American "children and teenagers[,]" such as England. Pl. Gerald's November 9, 2015, Am. Compl. ¶¶ 8-11.

[88] Pl. Gerald's November 9, 2015, Am. Compl. ¶¶ 8-12, 20, 37-39, 42, 49-50; Pl. Brown's November 9, 2015, Am. Compl. ¶¶ 9-13, 21, 36-28, 41, 47.

[89] See Pl. Gerald's November 9, 2015, Am. Compl. ¶ 49; Pl. Brown's November 9, 2015, Am. Compl. ¶ 147.

facts regarding Lorillard's breach of the implied warranty of merchantability, an essential element of Plaintiffs' claim.[90] In resolving all reasonable inferenres in favor of Plaintiffs, the facts are also sufficient to plausibly suggest Lorillard's concealment prevented Decedents from discovering the nature of their breach of the implied warranty of merchantability claims within the four-year statute of limitations period and that Decedents could not have discovered sufficient facts to identify their claims despite reasonable care and diligence, given Lorillard's alleged conduct and the latency of Decedents' diseases.

The Court recognizes that in *Brown*, Plaintiff's claim is time-barred unless the statute of limitations is tolled under this doctrine for a minimum of twenty-six years from the last date Decedent Brown purchased Newport cigarettes in 1976, while Plaintiff Gerald's claim must be tolled at least one year because the facts plausibly suggest England last purchased Newport cigarettes in 2005. However, Plaintiffs having adequately pled facts that plausibly suggest the fraudulent concealment tolling doctrine applies, the ultimate applicability of the doctrine depends on the resolution of factual issues, which must take place on the merits and not at the motion to dismiss stage.

Consequently, the Court will not dismiss Plaintiffs' claims for breach of the implied warranty of merchantability (Count IV) at this stage in the proceedings.

## II. Negligent Performance of a Voluntary Undertaking (Count II).

██ In moving to dismiss the Amended Complaints, Reynolds also argues that Plaintiffs' claims for negligent performance of a voluntary undertaking fail because the facts are insufficient to demonstrate "where or how Lorillard undertook anything that could constitute a voluntary duty to Decedent[s or] . . . how any alleged breach by Lorillard of this alleged undertaking caused Decedent[s'] injur[ies]" because "[f]ederal and state courts throughout the country . . . unfailingly have rejected voluntarily-assumed duty claims against cigarette manufacturers based on

---

[90] Plaintiffs allege that Lorillard owed Decedents a "duty to disclose[,]" which the Court need not address since the "active concealment" standard is satisfied by the factual allegations contained in the Amended Complaints. Pl. Gerald's November 9, 2015, Am. Compl. ¶ 47; Pl. Brown's November 9, 2015, Am. Compl. ¶ 45.

469

such general public statements."[91] In their Opposition, Plaintiffs submit no argument regarding the viability of these claims. Nevertheless, in accordance with the policy of the Supreme Court of the Virgin Islands, the Court must address the merits of Reynolds' argument.[92]

Because the Supreme Court of the Virgin Islands has yet to delineate the elements of a claim for negligent performance of a voluntary undertaking, and the Superior Court has yet to do so within the confines of *Banks*, the Court must conduct a *Banks* analysis in order to determine the applicable common law.[93] With respect to the first *Banks* factor, whether any Virgin Islands courts have previously adopted a particular rule, the Superior Court has consistently applied RESTATEMENT (SECOND) OF TORTS §§ 323, 324A to negligence claims arising from the defendant's voluntary assumption of a duty, also known as the "Good Samaritan's duty."[94] The District Court and Third Circuit have also applied Sections 323 and 324A when considering these claims.[95]

██ Section 323 of the Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or

---

[91] Def.'s Mot. to Dismiss (*Brown*), pp. 7-8; Def.'s Mot. to Dismiss (*Gerald*), pp. 7-8.

[92] *See Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 583-584 (V.I. 2015) ("[T]he fact that a summary judgment motion is deemed uncontested due to a procedural defect — such as not filing a timely opposition — is not grounds for accepting the moving party's undisputed facts as true"); *see also People of the V.I. v. Armstrong*, 64 V.I. 528, 538 (V.I. 2016) ("This Court has consistently held that silence — without more — is not tantamount to consent or agreement . . . '[t]he failure to submit opposing papers is not tantamount to an affirmative concession that the facts alleged by [the] defendant are true.'") (citing *Najawicz v. People*, 58 V.I. 315, 325 n.6 (V.I. 2013)) (Internal and other citations omitted).

[93] *Supra* n.66-67.

[94] *See, e.g., Zakers v. Cuffy*, 2013 V.I. LEXIS 88, at *7 (V.I. Super. Ct. Dec. 5, 2013); *Peters v. V.I. Water & Power Auth.*, 2013 V.I. LEXIS 65, at *4-5 (V.I. Super. Ct. Oct. 7, 2013); *DeJesus v. V.I. Water & Power Auth.*, 55 V.I. 402, 416 n.7 (Super. Ct. 2011); *Shealy v. W. Indies Mgmt. Co.*, 2011 V.I. LEXIS 58, at *14 (V.I. Super. Ct. Dec. 5, 2011); *In re Catalyst Litig.*, 2010 V.I. LEXIS 126, at *5 (V.I. Super. Ct. June 30, 2010).

[95] *Turbe v. Gov't of V.I.*, 938 F.2d 427, 430-432 (3d Cir. V.I. 1991); *Henry v. St. Croix Alumina, LLC*, 2007 U.S. Dist. LEXIS 98205, at *48-50 (D.V.I. Aug. 10, 2007).

(b) the harm is suffered because of the other's reliance upon the undertaking.[96]

Section 324A of the Restatement "parallels the one stated in § 323, as to the liability of the actor to the one to whom he has undertaken to render services[,]" but "deals with the liability to third persons."[97] Because Plaintiffs' allegations do not stem from Lorillard's purported liability to Decedents as third parties, the Court will limit its discussion to the principles under Section 323 of the Second Restatement. Section 323 of the Second Restatement is recast in RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 42, which apart from making linguistic changes, does not substantially alter the tortfeasor's liability under Section 323.[98] The Superior Court has considered Section 42 of the Third Restatement on at least one occasion.[99]

▮ As to the second *Banks* factor, the position taken by a majority of courts from other jurisdictions, Section 323 of the Restatement (Second) of Torts "has been widely accepted" in that "[n]early every jurisdiction has endorsed and applied § 323 or accepted a similar principle."[100] However, "[a] substantial number of states have statutes that modify the common-law duty of Good Samaritans[,]" some of which "are limited to specific categories of Good Samaritans, such as physicians . . . [or]

---

[96] RESTATEMENT (SECOND) OF TORTS § 323 (1979).

[97] RESTATEMENT (SECOND) OF TORTS § 324A cmt. a (1979); *Turbe*, 938 F.2d at 432 (noting that § 324A(a) is "a companion provision to § 323(a)"). In full, RESTATEMENT (SECOND) OF TORTS § 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

[98] *See* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYS. & EMOT. HARM § 42 cmt. a-c (2010).

[99] *Jacobs v. Roberts*, 2015 V.I. LEXIS 58, at *11 (V.I. Super. Ct. May 21, 2015).

[100] RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYS. & EMOT. HARM § 42, Reporter's Note to cmt. a; *see* 57A AM. JUR. 2D *Negligence* § 104 (2017).

emergency undertakings."[101] As mandated by the Supreme Court of the Virgin Islands, the Court will not consider case law relying on these statutes as part of its *Banks* analysis.[102]

▇ The final and most important *Banks* factor requires the Court to determine which approach represents the soundest rule for the Virgin Islands. Considering the assumption of a voluntary duty under RESTATEMENT (SECOND) OF TORTS § 323 constitutes an expression of the territory's common law and the widespread acceptance of the provision by courts in other jurisdictions, the Court concludes that Section 323 of the Second Restatement is the soundest rule for the Virgin Islands. The Court's adoption of Section 323 fosters consistency in the territory's application of this special duty rule and promotes fairness by endorsing an approach uniformly supported in other jurisdictions.

Here, Plaintiffs allege in the Amended Complaints that "[b]eginning in 1954 Lorillard voluntarily undertook a duty to the American public, including [Decedents], . . . to accept an interest in the public's health as a basic and paramount responsibility, and, in furtherance of that responsibility, agreed to cooperate closely with those who safeguard the public health; agreed to aid and to assist the research effort into all aspects of tobacco use and human health; agreed to continue to research and otherwise to undertake all possible efforts to learn all the facts and to discover the truth about smoking and health; and finally, agreed to disclose to the American public complete and accurate information about the effects of cigarette smoking on human health."[103] According to the Amended Complaints, Lorillard breached this duty by failing to "cooperate closely with those who safeguard the public health[,]" aid, assist, or continue research regarding the effects of cigarette smoking on

---

[101] RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYS. & EMOT. HARM § 42 cmt. j; *see* Danny R. Veilleux, J.D., *Construction and application of "good Samaritan" statutes*, 68 A.L.R.4th 294 (2017).

[102] The Superior Court should consider "non-statutory law created by judicial precedent" and "exclud[e] case law relying on state statutes from a *Banks* analysis." *In re L.O.F.*, 62 V.I. at 661 n.6 (citing *King v. Appleton*, 61 V.I. 339, 351 n.9 (V.I. 2014)).

[103] Pl. Gerald's November 9, 2015, Am. Compl. ¶¶ 23-24; *see* Pl. Brown's November 9, 2015, Am. Compl. ¶¶ 23-24.

human health, or disclose "complete and accurate information" regarding same to the "American public."[104]

The 1954 date referenced by Plaintiffs refers to a "[p]ublication in 1954 by Lorillard and other tobacco manufacturers, through their trade association[,]" entitled " 'A Frank Statement to Cigarette Smokers' (Frank Statement)[,]" in which Lorillard and other tobacco manufacturers "promised the public that [they] . . . would do research to reveal the true dangers of cigarette smoking" when they already knew "the true dangers of smoking cigarettes . . . at the time the Frank Statement was published."[105] As the Massachusetts Supreme Judicial Court has pointed out, "[n]umerous courts have considered whether cigarette manufacturers voluntarily assumed a legal duty by joining the Frank Statement and, to our knowledge, all have concluded that they did not."[106]

■ Even assuming, *arguendo*, these allegations demonstrate that Lorillard voluntarily undertook a duty to Decedents, the Complaint fails to allege facts sufficient to plausibly suggest that Lorillard's failure to exercise reasonable harm increased the risk of harm to the Decedents or that the Decedents relied upon Lorillard's undertaking to their detriment. While Plaintiffs state the risk of harm to Decedents was increased "above and beyond what it would have been had Lorillard not publicly represented that it was going to engage in the undertaking at all[,]"[107] these are legal conclusions that are not entitled to an assumption of truth. Because the Amended Complaints are devoid of specific factual allegations to establish an increased risk of harm or reliance by Decedents, an essential element of a claim for negligent performance of a voluntary undertaking, Count II of the Amended Complaints fail to state a claim upon which relief can be granted.

■ Where a complaint is subject to dismissal for failure to state a claim upon which relief can be granted, the Superior Court has

---

[104] Pl. Gerald's November 9, 2015, Am. Compl. ¶¶ 25-26; Pl. Brown's November 9, 2015, Am. Compl. ¶¶ 25-26.

[105] Pl. Gerald's November 9, 2015, Am. Compl. ¶ 49(e); Pl. Brown's November 9, 2015, Am. Compl. ¶ 47(e).

[106] *Evans v. Lorillard Tobacco Co.*, 465 Mass. 411, 447, 990 N.E.2d 997, 1026-27 (2013) (collecting cases); *see also Wright v. Brooke Grp. Ltd.*, 652 N.W.2d 159, 178 (Iowa 2002) (collecting cases).

[107] Pl. Gerald's November 9, 2015, Am. Compl. ¶ 26; *see* Pl. Brown's November 9, 2015, Am. Compl. ¶ 26.

consistently granted plaintiffs leave to amend the complaint to cure any deficiencies, unless doing so would be inequitable or futile.[108] Here, amendment would be inequitable because Plaintiffs have had numerous opportunities to amend their Complaints and trial in these cases is imminent. As a result, the Court will not grant Plaintiffs leave to amend the Complaints to cure the aforementioned deficiencies. Consequently, Reynolds' Motions to Dismiss as to Count II of the Amended Complaints will be granted.

### III. Wrongful Death and/or Survival Claim (Count VII).

#### A. Survival Claims.

 Relying on District Court cases, Reynolds argues that Plaintiffs' survival claim must be dismissed because Plaintiffs have also brought a claim to recover for Decedents' deaths under the wrongful death statute and wrongful death and survival claims are mutually exclusive.[109] Plaintiffs object, arguing the Superior Court has consistently found that "a decedent's personal representative may simultaneously pursue both wrongful death and survival claims."[110] The Court agrees with Plaintiffs.

 The Legislature amended the statutes governing wrongful death and survival actions, 5 V.I.C. §§ 76-77, in 2001. In 2010, the Superior Court in *Crawford v. Daly*[111] conducted exhaustive statutory interpretation of 5 V.I.C. §§ 76-77 and concluded that "following the 2001 amendments, a plaintiff *is* now allowed to plead and recover under both 5 V.I.C. § 76 (wrongful death statute) and 5 V.I.C. § 77 (survival statute) in one cause of action."[112] Like Reynolds, the defendant in *Crawford* urged the Court to adopt the District Court's conclusion in *Fleming v. Whirlpool Corp.*[113] that actions under 5 V.I.C. §§ 76-77 remain mutually

---

[108] *Adams v. North West Co., Inc.*, 63 V.I. 427, 439 (V.I. Super. Ct. 2015) (citing *Benjamin v. Bennerson*, 2012 V.I. LEXIS 7, at *7 (V.I. Super. Ct. Feb. 13, 2012); *James-St. Jules v. Thompson*, 2015 V.I. LEXIS 74, at *12-13 (V.I. Super. Ct. June 25, 2015) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Brathwaite v. H.D.V.I. Holding Co.*, 2017 V.I. LEXIS 76, at *8 (V.I. Super. Ct. May 24, 2017) (citations omitted)).

[109] Def.'s Mot. to Dismiss (*Brown*), pp. 16-17; Def.'s Mot. to Dismiss (*Gerald*), pp. 16-17.

[110] Pls.' Joint Partial Opp'n to Def.'s Mot. to Dismiss, p. 11.

[111] 55 V.I. 66 (Super. Ct. 2010).

[112] *Id.* at 90.

[113] 301 F. Supp. 2d 411, 45 V.I. 439 (D.V.I. 2004).

exclusive after the 2001 amendments.[114] In *Crawford*, the Superior Court "decline[d] to 'follow-in-tow' of *Fleming*," noting that because the personal injuries at issue in *Fleming* arose prior to the 2001 amendments, the District Court was "bound by the law in effect at the time the cause of action arose" and therefore had correctly relied upon "existing case law surrounding torts committed prior to the 2001 amendments[,]" namely *Mingolla v. Minnesota Mining and Mfg. Co.*[115]

In 2014, Superior Court delved further into the history behind the current wrongful death action and survival action statutes in *Der Weer v. Hess Oil Virgin Island Corp.*[116] by explaining:

> In 1974, the Legislature effectively repealed the 1957 wrongful death statute by borrowing Florida's Wrongful Death Act "word for word with few exceptions." Among other changes not relevant here, the 1974 amendments to [5 V.I.C. § 76] declared that "[w]hen a personal injury to the decedent results in his death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." A personal representative could still pursue a survival action for the estate, but only if the injury was not the cause of the person's death. If it was, then the tort claim abated under the 1974 amendments. The first case to consider the 1974 amendments was *Mingolla v. Minnesota Mining and Manufacturing Company*, 893 F. Supp. 499 (D.V.I. 1995) .... [The District Court in] *Mingolla* correctly stated the law in the Virgin Islands after the 1974 amendments, that "survivors must prosecute their claims" in a wrongful death action "[w]hen the injury to the decedent results in his death." As a result, the Legislature in 2001, presumably in response to *Mingolla*, amended [5 V.I.C. § 76] once more. The 2001 amendments changed "no action" to "any action" in subsection (d) and delet[ed] the phrase "and any such action pending at the time of death shall abate." In place of the deleted language, the Legislature added the phrase "whether or not filed at the time of death, and shall not abate." Currently, section 76(d) provides that "any action for the personal injury shall survive, whether

---

[114] *Crawford*, 55 V.I. at 76.

[115] *Id.* at 77-78 & n.11 (emphasis added); *see Mingolla v. Minnesota Mining and Mfg. Co.*, 893 F. Supp. 499, 507 (D.V.I. 1995).

[116] 61 V.I. 87.

or not filed at the time of death, and shall not abate" even if the "personal injury to the decedent results in his death" .... [T]he only logical conclusion for the 2001 amendments is that the Legislature intended to overrule *Mingolla* and revive death-related tort claims under [5 V.I.C. § 77 survival actions].[117]

In interpreting 5 V.I.C. §§ 76-77 after the 2001 amendments, the Superior Court has made clear that, while a personal representative may bring a survival claim and a wrongful death claim in the same action,[118] the claims remain separate and distinct because "[e]ach right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses."[119] Thus, "[a]lthough wrongful death claims and survival claims can be related, particularly when the injury is also the cause of death, they are not the same cause of action."[120] Likewise, the Superior Court has held that a personal representative acts in different capacities, and therefore as different parties, when pursuing a survival claim and wrongful death claim.[121] "In a wrongful death action, the personal representative represents the interests of the survivors, as well as the estate . . . [while i]n a survival action, the personal representative acts only on behalf of the estate."[122] Finally, "because wrongful death actions and survival actions are different causes of action, [d]ifferent statutes of limitation apply."[123]

Clinging to outdated case law,[124] Reynolds discounts the Superior Court's consistent rejection of the District Court's reasoning derived from

---

[117] *Id.* at 106-107 (internal quotation marks omitted) (internal citations omitted).

[118] *Id.* at 110; *accord Crawford*, 55 V.I. at 91.

[119] *Der Weer*, 61 V.I. at 101-102 (citing *Taylor v. Giddens*, 618 So. 2d 834, 840 (La. 1993)); *accord Crawford*, 55 V.I. at 91.

[120] *Der Weer*, 61 V.I. at 100.

[121] *Id.* at 112-113 (citations omitted).

[122] *Id.*

[123] *Id.* at 115 (citing *Piacquadio v. Beaver Valley Serv. Co.*, 355 Pa. 183, 49 A.2d 406, 407 (1946)) (internal quotation marks omitted).

[124] Reynolds even suggests that "[d]espite litigants' arguments that the [District Court has] misinterpreted the Legislature intent, the Virgin Islands [L]egislature has not amended Section 76 and Section 77." Def.'s Reply, p. 10 n.8. Clearly, this argument lacks merit. The Supreme Court of the Virgin Islands has expressly warned that "[L]egislative inaction . . . has been called 'a weak reed upon which to lean' and a 'poor beacon to follow' to construe a statute." *Garcia v. Garcia*, 59 V.I. 758, 775 (V.I. 2013) (citing 2B NORMAN J. SINGER & J.D.

the pre-2001 amendments to 5 V.I.C. §§ 76-77.[125] The Court is persuaded by the Superior Court's sound interpretation of 5 V.I.C. §§ 76-77 and will not create discordant precedent merely because the District Court has continued to apply an antiquated interpretation of the statutes.[126] Consequently, the Court concludes that Plaintiffs may simultaneously assert claims for wrongful death and survival here.

■ A survival action under 5 V.I.C. § 77 permits a decedent's personal representative to recover "[d]amages a deceased person may have suffered from a personal injury" on behalf of the decedent's estate.[127] 5 V.I.C. § 77 provides that the following damages are available in a survival action: "loss of earnings and expenses sustained or incurred [by the decedent] as a result of the injury[,]" including "damages for pain, suffering and disfigurement, or punitive or exemplary damages, or prospective profits or earnings after the date of death."[128]

■ In asserting survival claims, Plaintiffs are entitled to seek the relief available under 5 V.I.C. § 77, including punitive damages and damages for Decedents' pain and suffering and loss of enjoyment of life.[129] As a result, the Court will neither dismiss Plaintiffs' survival claim, nor strike the relief requested by Plaintiffs thereunder.

---

SHAMBIE SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 49:9 & n.2 (7th ed. 2012)).

[125] See, e.g., Crawford, 55 V.I. 66; Der Weer, 61 V.I. 87; Estate of Ettienne v. Hess Oil V.I. Corp., Case No. SX-05-CV-583, Order (Super. Ct. February 12, 2013); Massicot v. Callendar, Case No. ST-13-CV-71, slip. op. (Super. Ct. September 9, 2015), vacated in part on other grounds, slip. op. (Super. Ct. January 14, 2016); Halliday v. Foot Locker Specialty, Inc., 2014 V.I. LEXIS 92, at *13 (V.I. Super. Ct. Oct. 20, 2014); Connor v. Gov't of the V.I., 2013 V.I. LEXIS 81, at *14-15 (V.I. Super. Ct. Aug. 29, 2013), rev'd on other grounds, 60 V.I. 597, 598 (V.I. 2014).

[126] See Hamilton v. Dowson Holding Co., 51 V.I. 619, 625-626 (D.V.I. 2009) (citing Fleming, 301 F. Supp. 2d 411, 45 V.I. 439 and Mingolla, 893 F. Supp. 499); see Def.'s Mot. to Dismiss (Brown), p. 17 (citing Hamilton, 51 V.I. 619); Def.'s Mot. to Dismiss (Gerald), p. 17 (same); Def.'s Reply, pp. 9-10 (same).

[127] Der Weer, 61 V.I. at 110, 112-113 (citations omitted); 5 V.I.C. § 77.

[128] 5 V.I.C. § 77.

[129] See Shillingford v. V.I. Port Authority, 2006 V.I. LEXIS 41, at *22-23 (V.I. Super. Ct. Sept. 8, 2006) (damages awarded for "pain and suffering" included those for "loss of enjoyment of life"); see also Eyoma v. Falco, 247 N.J. Super. 435, 589 A.2d 653, 658-59 (1991) (noting that the majority of jurisdictions consider "loss of enjoyment of life . . . as one of the numerous factors characterizing a general damage award for pain and suffering") (citations omitted).

477

## B. Wrongful Death Claims.

Reynolds contends that Plaintiffs' wrongful death claims must be dismissed in part "to the extent [they are] . . . based on legally insufficient claims" because "[a] statutory wrongful death claim is dependent on the viability of the underlying causes of action."[130] Plaintiffs do not appear to contest Reynolds' argument.[131]

The wrongful death statute, 5 V.I.C. § 76(c), provides, in pertinent part:

> When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, . . . *and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued*, the person . . . that would have been liable in damages if death had not ensued shall be liable for damages as specified in this section notwithstanding the death of the person injured . . . .[132]

The Supreme Court of the Virgin Islands has yet to construe 5 V.I.C. § 76, and no other Virgin Islands courts have directly considered this issue. Applying the rules of statutory construction,[133] the plain language of 5 V.I.C. § 76(c) is ambiguous because it is unclear whether the provision requires the plaintiff to allege and prove a viable personal injury action as a prerequisite to the filing of a wrongful death cause of action, as opposed to merely requiring the plaintiff to allege and prove "some original [wrongful conduct] on the part of the defendant, under circumstances giving rise to liability in the first instance"[134] so as to entitle the plaintiff to seek redress in the form of damages under 5 V.I.C. § 76.

---

[130] Def.'s Mot. to Dismiss (*Gerald*), p. 15; Def.'s Mot. to Dismiss (*Brown*), p. 15.

[131] *See* Pls.' Joint Partial Opp'n to Def.'s Mot. to Dismiss, pp. 11-19.

[132] 5 V.I.C. § 76(c) (emphasis added).

[133] *Supra* n.57.

[134] *Miller v. Estate of Sperling*, 166 N.J. 370, 384-85, 766 A.2d 738, 746 (2001) (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on the Law of Torts* § 127 at 957 (5th ed. 1984).

■ ■ It is axiomatic that a right of recovery depends on the defendant's liability for a legal wrong.[135] Virgin Islands courts have long held that 5 V.I.C. § 76 creates a new and independent action "to compensate survivors for the loss occasioned by the death."[136] 5 V.I.C. § 76 is silent as to a statute of limitations for bringing a wrongful death claim. However, the Third Circuit, while sitting as the *de facto* court of last resort for the Virgin Islands, has interpreted 5 V.I.C. § 76 and concluded that a wrongful death claim is subject to the general two-year statute of limitations period for personal injury actions, which begins to run on the date of the decedent's death rather than the date of injury.[137] The Third Circuit's interpretation suggests that the wrongful death statute is not contingent on the decedent's filing or ability to file a timely claim before death. This Court agrees.

■ The Legislature clearly instructs that "[i]t is the public policy of the Territory to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer" and that 5 V.I.C. § 76 is "remedial and shall be liberally construed."[138] To construe the phrase "and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued" as requiring the decedent to have timely filed the claim before his or her death and before the expiration of the underlying claim's statute of limitations would contravene this purpose.

■ This conclusion is consistent with the reasoning of courts in other jurisdictions, which have concluded that the language "if death had not ensued" in their state's wrongful death statute refers to the character of the injury, or in other words, the instant availability of the claim upon which

---

[135] 1 AM. JUR. 2D *Actions* § 49 (2017) ("The mere fact of damage does not give rise to a cause of action. Damage sufficient to sustain a cause of action is damage resulting from a wrongful or unlawful act") (footnotes omitted).

[136] *Leonard v. Gov't of the V.I.*, 17 V.I. 169, 172-73 (1980) ("Labeling the [beneficiaries'] rights derivative, however, is wrong . . . . A [beneficiary's] injury is distinct from the victim's, and the [beneficiary's] right to sue for damages is independent of the right of the victim's estate to recover"); *Tobal v. Cebedo*, 41 V.I. 50, 55 (Terr. Ct. 1999); *see Der Weer*, 61 V.I. at 101, 111.

[137] *Richardson v. Knud Hansen Memorial Hospital*, 744 F.2d 1007, 1011-1012 (3d Cir. V.I. 1984); *see Lockhart-Mollah v. Gov't of the V.I.*, 2009 U.S. Dist. LEXIS 67541, at *6 (D.V.I. July 31, 2009); *Cintron v. Bermudez*, 6 V.I. 962, 696 (D.V.I. 1968) (holding that the two-year personal injury provision in section 31(5)(A) is applicable in wrongful death actions).

[138] 5 V.I.C. § 76(a).

to hold the defendant liable, rather than "a procedural or jurisdictional prerequisite" that the wrongful death claim be brought within the statute of limitations that would apply to the underlying claim had the decedent not died.[139] In fact, "the considerable majority of the courts have held that the statute runs against the death action only from the date of death, even though at that time the decedent's own action would have been barred while he [or she] was living."[140] Considering this, and the underlying policy of 5 V.I.C. § 76, the Court concludes that, as an independent and separate cause of action, a wrongful death claim is not barred by the expiration of the statute of limitations on the decedent's underlying claim.

To be clear, the plaintiff's ability to recover under 5 V.I.C. § 76 depends on an underlying claim upon which the defendant is found liable. If the defendant cannot be held liable, say because no wrongful conduct was committed or the decedent affirmatively and voluntarily extinguished the claim prior to death, the bar to a decedent's injury claim would also preclude a claim by the decedent's beneficiaries under the wrongful death statute.[141] In those circumstances, the decedent would have no basis for holding the defendant liable at the outset, and thus there would be no liability upon which the beneficiaries could seek redress under 5 V.I.C. § 76.[142]

With this conclusion in mind, the Court revisits Reynolds' argument that Plaintiffs' wrongful death claims must be dismissed as they relate to Count II and Count IV, respectively, because the facts alleged in the Amended Complaints are insufficient to establish the essential elements

---

[139] *FutureCare Northpoint, LLC v. Peeler*, 229 Md. App. 108, 143 A.3d 191, 208-213 (Ct. Spec. App. 2016) (collecting cases); *see also Miller v. Estate of Sperling*, 166 N.J. 370, 371, 766 A.2d 738, 739 (2001).

[140] *Miller*, 166 N.J. at 384 (citing *Prosser & Keeton, supra* at 957); *id.* at 383-84 (collecting cases); *see FutureCare*, 143 A.3d at 208-213 (collecting cases).

[141] *See FutureCare*, 143 A.3d at 205 ("[D]efenses such as contributory negligence or assumption of risk would bar a decedent's injury claim, the wrongful death statute would also preclude a claim by the decedent's relatives[,] . . . [but] those defenses are distinguishable from a statute of limitations defense, however, because, where those defenses apply, the decedent did not have a viable claim from the outset") (citing *Mummert v. Alizadeh*, 435 Md. 207, 221-22, 77 A.3d 1049, 1057 (2013)).

[142] *Id.*; *cf. Der Weer*, 61 V.I. at 101-02 (noting parenthetically that "[a]lthough both actions arise from a common tort, survival and wrongful death actions are separate and distinct. Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses") (citing *Giddens*, 618 So. 2d at 840).

of a negligent performance of a voluntary undertaking claim and the breach of implied warranty of merchantability claims are time-barred under the statute of limitations proscribed in the Virgin Islands U.C.C.[143]

With respect to Plaintiffs' wrongful death claims as they relate to the purported liability of Lorillard under Count IV of the Amended Complaints, the foregoing makes clear that the statute of limitations began to run on the date of the Decedents' death. Decedents England and Brown, respectively, passed away on November 30, 2012, and November 22, 2011.[144] Plaintiff Gerald and Plaintiff Brown sought leave to amend their Complaints to assert claims for wrongful death on February 6, 2013, and June 7, 2012, respectively, well within two years of the Decedents' deaths. Thus, Plaintiffs' wrongful death claims are not time-barred with respect to Count IV.

As to Plaintiffs' wrongful death claims as they relate to Count II of the Amended Complaints, Reynolds cites no authority that suggests that a wrongful death claim must be dismissed "in part" as to a fatally deficient claim, when the Complaint sufficiently states other causes of action that provide a basis for the defendant's liability. Because this is the case here, the Court declines to dismiss Plaintiffs' wrongful death claims "in part."

## CONCLUSION

Considering the foregoing, Defendant R.J. Reynolds Tobacco Company's Motions to Dismiss will be granted in part as to Plaintiffs' claims for negligent performance of a voluntary undertaking in Count II of the Amended Complaints, but denied as to the remaining claims (Counts I, III-VII).

An Order consistent with this Memorandum Opinion shall follow.

---

[143] Def.'s Mot. to Dismiss (*Gerald*), p. 15; Def.'s Mot. to Dismiss (*Brown*), p. 15.

[144] Pl. Gerald's November 9, 2015, Am. Compl. ¶ 8; Pl. Brown's November 9, 2015, Am. Compl. ¶ 9.